MORGANTON MANUFACTURING AND TRADING COMPANY
ET ALS. v. E. L. ANDREWS AND C. A. CREWS.

(Filed 15 April, 1914.)

1. **Liens — Material Men—Contract—Principal and Surety—Bond—
   Interpretation.**

   Where the material man sues the owner of the building, claim-
   ing a lien thereon for material furnished, and seeks to hold the
   surety liable under a bond indemnifying the owner against loss,
   if any, arising to him under the contract, the bond of indemnity
   and the agreement with the contractor should be construed to-
   gether.

2. **Same—Contracts Expressed—Payment Under Contract—Liability
   of Surety.**

   Where the owner of a building erected under an agreement
   with the contractor that the latter should build the house speci-
   fied for a sum certain and turn it over to the owner completed,
   stipulations in the contracts that the contractor furnish the ma-
   terials add nothing to the agreement of the contractor already
   expressed; and when the bond expressly states that it was solely
   an indemnity against personal loss to the owner, there can be no
   liability of the surety implied contrary to the terms of the writ-
   ing, and the owner not being liable to the lienor who has failed
   to notify him of his lien when there was money due by him to
   the contractor, there can be no liability on the part of the surety
   thereon.  *Supply Co. v. Lumber Co.*, 160 N. C., 428, etc., cited
   and distinguished.

3. Statutes—Codification—Interpretation—Meaning Reconciled.

> Statutes enacted upon the same subject-matter should be contrued together and their meaning reconciled when possible, and where various enactments have been codified by the Legislature, it is permissible, in their construction, for the courts to regard the original statutes and their history in the light of former decisions.

4. Liens — Statutes — Interpretation — Material Men—Funds Due—Moneys Prorated.

> Where the owner of a building erected under contract has not sufficient funds in his hands to pay all the lienors thereon for material furnished, the amount due the contractor, subject to the liens, shall be distributed by the owner among the several claimants under the provisions of section 2023 of the Revisal; and construing this section with other relevant sections of the Revisal, it is held that it does not conflict with section 2035, requiring "that liens created and established by this chapter (48) shall be paid and settled according to priority of the notice of the lien filed with the justices or the clerk," for this latter section relates to liens filed with the proper officers, and does not affect the provisions as to subcontractors who acquire a lien by notice to the owner.

Appeal by plaintiff from *Lane, J.,* at September Term, 1913, of Forsyth.

This is an action by the Morganton Manufacturing and Trading Company and other creditors to enforce liens for materials furnished.

The defendant E. L. Anderson was the owner of a lot in Winston, and on 28 August, 1911, he entered into a contract with the defendant C. A. Crews as contractor, by which the latter agreed to build a house thereon for $4,600.

The parts of the contract material to be set out are:

"The contractor shall and will provide all the materials and perform all the work for the erection and completion of a two-story frame residence located on lot fronting Brookstown Street, in the city of Winston, N. C.

"To secure the true and faithful performance of all and every of the covenants and agreements herein mentioned, the party of the first part shall, at his own expense, within ten days from this

date, furnish said party of the second part a bond signed by the
American Surety Company in the sum of $1,000, to protect the
second party against damage suits, for personal injuries, for
liens, for material or labor; to remain in full force and effect
until representation of satisfactory evidence of the satisfaction
of all such claims.

"The final payment shall be made within ten days after the
completion of the work included in this contract, and all pay-
ments shall be due when certificates for the same are issued.

"If at any time there shall be evidence of any lien or claim
for which, if established, the owner of the said premises might
become liable, and which is chargeable to the contractor, the
owner shall have the right to retain out of any payment then
due or thereafter to become due an amount sufficient to com-
pletely indemnify him against such lien or claim. Should there
prove to be any such claim after all payments are made, the
contractor shall refund to the owner all moneys that the latter
may be compelled to pay in discharging any liens on said prem-
ises made obligatory in consequence to the contractor's default."

By agreement, the bond provided for in the contract was exe-
cuted by the defendant the Maryland Casualty Company, in-
stead of by the American Surety Company, and the penalty in
the bond was $4,600 and not $1,000.

The bond contains the following provisions, among others:

"Now, therefore, the condition of this obligation is such that
if the said principal, shall faithfully perform said contract on
his part, according to the terms, covenants, and conditions
thereof (except as hereinafter provided), then this obligation
shall be void; otherwise, to remain in full force and effect.

"This bond is executed by the surety upon the following ex-
press conditions, which shall be conditions precedent to the right
of the owner to recover hereunder:

"The surety shall not be liable under this bond to any one
except the owner; but it is agreed that the owner, in estimating
his damage, may include the claims of mechanics and material
men, arising out of the performance of the contract, and paid

by him, only when the same by the statutes of the State where the contract is to be performed are valid liens against his property."

The Morganton Manufacturing and Trading Company furnished materials for said building, and which were used therein, of the value of $1,063.31, and the other creditors materials of the value of $1,877.18, all of which were furnished under contract with the said Crews, contractor.

All of said creditors filed notice of their claims with the defendant Anderson, and at the time of filing such notice there was due the contractor, Crews, who is insolvent, by the owner, Anderson, $1,328.39.

Said creditors also filed notice of lien in the office of the clerk of the Superior Court, the notice of lien of the Morganton Manufacturing and Trading Company being the first filed.

The matters in controversy were tried before a referee, Mr. J. E. Alexander, and upon the facts found by him, substantially as herein stated, his Honor adjudged that the Maryland Casualty Company was not liable to the creditors, and that the balance in the hands of Anderson should be distributed pro rata among all the creditors, to which the creditors excepted and appealed.

The creditors other than the Morganton Manufacturing and Trading Company except to (1) "the refusal of the court to find as a matter of law that the Maryland Casualty Company was bound to said parties who furnished material in the completion of the house of E. L. Anderson; and further except to the judgment of the court that the bond executed by the surety company was bound only to the extent of protecting E. L. Anderson, and did not protect material men and laborers for work done and material furnished."

The Morganton Manufacturing and Trading Company excepts (1) "To the ruling of the court overruling the said plaintiff's first exception to the report of the referee, and holding that this plaintiff was not entitled to priority by reason of filing the first lien in the office of the clerk of the Superior Court of Forsyth County, as set forth in said exception, which is hereby

referred to and made a part hereof as fully as if written herein."
(2) "To the ruling of the court in overruling said plaintiff's
second exception to the report of the referee, and holding that
the parties were entitled to prorate in the fund, and that this
plaintiff was not entitled to priority, as set forth in said excep-
tion which is hereby referred to and made a part hereof as fully
as if written herein." (3) "To the judgment of the court that
the fund should be prorated between all claimants, notwith-
standing this plaintiff had filed the first lien in the office of the
clerk of the Superior Court of Forsyth County."

*J. T. Perkins for Morganton Manufacturing and Trading
Company.*

*Watson, Buxton & Watson and L. M. Swink for other cred-
itors.*

*F. P. Hobgood, Jr., for Maryland Casualty Company.*

Allen, J: The contract entered into between the defendants
Anderson and Crews, and the bond executed by the Maryland
Casualty Company to secure its performance, must be considered
together, as contended by the creditors, in order to properly de-
termine the extent of the obligations of the bond; and when we
examine the contract, we find first an agreement upon the part
of the contractor to provide all the materials and to perform all
the work necessary to erect the building.

The contention of the creditors is that this is an agreement to
furnish the materials and labor and impliedly to pay for them,
and as the bond was executed to secure performance of the con-
tract, the Casualty Company is bound for the payment of the
claim for materials.

If this is a proper construction of the contract, and the Cas-
ualty Company is bound for obligations not expressed in the
bond, the conclusion contended for would seem to follow, in the
absence of restrictive words in the bond; but we are of opinion
this is not a correct view of the agreement of the parties.

The stipulation that the contractor will furnish the materials
and labor adds nothing to the agreement to build the house,
because it could not be built without the materials and labor,

and there can be no implied promise to pay between the contractor and the owner, the parties to the contract, as the contractor was to furnish the materials, and consequently there could be no implied promise to pay him for them, and the owner made the express promise to pay $4,600 for the building, which included materials.

The parties undertook to reduce their agreement to writing, and presumably inserted every provision regarded material, and it is a well recognized principle that there can be no implied contract where there is an express contract between the parties in reference to the same subject-matter. 9 Cyc., 242; *Lawrence v. Hester,* 93 N. C., 79.

The other part of the contract relied on simply protects the owner against liens upon his property, and against amounts he may be compelled to pay, and cannot extend the liability of the Casualty Company upon its obligation to see that the contract is faithfully performed beyond the amount for which the owner is liable.

If, however, this position was doubtful, the terms of the bond put the matter at rest.

It is therein expressly provided that, "The surety shall not be liable under this bond to any one except the owner," and that in estimating his damages, only those claims of mechanics and material men *"paid by him"* shall be included.

We therefore conclude, as it is not contended that the owner has paid any of the material men, and as he makes no claim against the Casualty Company, that his Honor properly held that the Casualty Company was not liable to the creditors.

The cases from North Carolina principally relied on by the creditors in support of their contention (*Gastonia v. Engineering Co.,* 131 N. C., 363; *Voorhees v. Porter,* 134 N. C., 591; *Supply Co. v. Lumber Co.,* 160 N. C., 428) are easily distinguishable from the one before us.

In the *Gastonia case* the reasonable intendment to pay grows out of the provision in the contract "for the payment of all material used and wages of all laborers employed by said contractor." These words occur in the contract, and there was

nothing in the bond to indicate that the bond did not guarantee such payment. The case also involved conditions which made it impossible for material men and laborers to protect themselves by filing liens, for the reason that the property belonged to a municipality and was not subject to liens.

In the *Voorhees case* the purchaser of goods expressly agreed to pay the debts of the seller, and it was held that one who guaranteed the performance of the contract to pay was liable to a creditor.

The *Supply Company case* was tried on demurrer. The demurrer necessarily admitted the truth of the allegation in the complaint, that the contractor agreed to pay for the material and labor, and that the bond simply guaranteed such payment. The bond contained neither restriction nor condition. It merely provided that, if the contractor should perform his contract it should be null and void, and that otherwise it should remain in full force and effect. If the contractor agreed to pay for material and labor, and the bond guaranteed that he would do so, it necessarily followed that there was a breach of the condition of the bond when he failed to do so, and the court could not do otherwise than declare that by reasonable intendment the bond in that case was made for the benefit and in the interest of material men and laborers. There was no suggestion in it that liability under it was confined to the owner.

In all these cases there was an express promise to pay in the contract, and a bond without restrictions to secure performance, while in the case under consideration there is no express promise, and the right to recover on the bond is limited to the owner.

This brings us to the exception of the Morganton Manufacturing and Trading Company to the ruling of his Honor, that the funds in the hands of the owner, being the balance due the contractor, shall be distributed pro rata among the claims of the material men, and not according to priority in filing the notice of liens with the clerk.

The controversy arises because of the apparent conflict between section 2023 of the Revisal and section 2035, both being parts of the same chapter, the first section providing that, "It

shall be the duty of the owner to distribute the amount (remaining due the contractor) pro rata among the several claimants," and the second that, "The liens created and established by this chapter shall be paid and settled according to the priority of the notice of lien filed with the justice or the clerk."

When laws have been codified, it is permissible to examine the original legislation as an aid to correct interpretation (*Rodgers v. Bell,* 156 N. C., 386), and a brief history of the lien laws, enacted to secure the payment of claims for labor done and materials furnished, now collected in chapter 48 of the Revisal, will furnish light in the solution of the question.

The first of these in chapter 117, Laws 1868-69, which, with some enlargement, is now section 2016 of the Revisal and the succeeding sections regulating the filing and the enforcement of the lien. Section 2035 of the Revisal was a part of this statute.

Soon after its enactment, it was held by the Supreme Court that no right to a lien was conferred by the statute unless there was a contract, express or implied, with the owner, creating the relation of creditor and debtor (*Wilkie v. Bray,* 71 N. C., 205), and as a result, subcontractors were excluded from its benefits, because they had no express contract with the owner, and none could be implied from the use of the materials as they were furnished to the contractor, and under the express contract between him and the owner.

The next step was the act to give subcontractors a lien (ch. 44, Special Session of 1880), which, with the act amendatory thereof (ch. 67, Laws 1887), is now sections 2019 to 2023, inclusive, of the Revisal, and it is in this last act of 1887 that we find for the first time the provision requiring the distribution pro rata among the subcontractors of the amount due the contractor, in the hands of the owner at the time he receives notice of their claims, which is now incorporated in section 2023 of the Revisal.

An instructive case discussing these statutes is *Lester v. Houston,* 101 N. C., 609, in which the Court says:

"The Constitution requires the General Assembly to 'provide by proper legislation for giving to mechanics and laborers an

adequate lien on the subject-matter of their labor.' Art. XIV, p. 4. And the statute gives the lien 'for the payment of all debts contracted for work done on the same or material furnished.' The Code, p. 1781. In the construction of this section, it is declared, in *Wilkie v. Bray,* 71 N. C., 205, that 'in order to create the lien, the circumstances must be such as first to create the relation of debtor and creditor, and then it is for the debt that he has the lien.'

"The effect of this ruling, which makes the statutory lien an incident to and the offspring of the contract out of which the indebtedness springs, and confines it to the party to the contract, made at June Term, 1874, was followed by the enactment of 29 March, 1880, entitled 'An act to give subcontractors, laborers, and material men a lien for their just dues,' the provisions of which constitute sections 1801, 1802, and 1803 of The Code in chapter 41.

"It was not intended to supersede the lien of the contractor, for it in direct terms gives the lien in favor of subcontractors, laborers, and material men a preference, 'the mechanics' lien now provided by law,' and provides that when notice is given, the aggregate of such liens shall not exceed the amount then due the original contractor.

"The legislation is intended to extend the remedy to those who work or furnish materials from which the owner derives a benefit in the improvement of his property, even where there are no contract relations between them and the owner, and enable them to secure, in order to the payment of what is due them, the indebtedness due from the debtor to the contractor."

If, therefore, there was no codification of the statutes, there could be no conflict between the provision as to priorities contained in the acts of 1868-69 and relating to materials furnished under contracts with the owner, express or implied, and the requirement of the act of 1887, that the balance in the hands of the owner shall be distributed pro rata among the subcontractors when there is no contract with the owner, because contained in different statutes, and applicable to different classes and conditions.

If so, does the incorporation of the two statutes into chapter 48 of the Revisal as one statute bring about a conflict, and are the two sections of the Revisal irreconcilable?

It is evident that neither the commissioners who codified the statutes nor the members of the General Assembly who adopted their work thought there was any conflict, as otherwise one of the sections would have been omitted from the Revisal; and it is our duty to give effect to both sections, if it can be done by any fair and reasonable interpretation. *Rodgers v. Bell, supra.*

When we turn to the chapters on liens we find that it has nine subdivisions, the second being devoted to subcontractors, and the section as to priorities being in the sixth.

The lien of the subcontractor is acquired by notice to the owner (Rev., sec. 2020), and there is not only no requirement that he shall file notice of lien with a justice or a clerk, but it is expressly provided in section 2022 that the sums due for furnishing materials, etc., shall be a lien "without any lien being filed before a justice of the peace or the Superior Court," and in the succeeding section (2023) that: "In the event the amount due the contractor by the owner shall be insufficient to pay in full the laborer, mechanic, or artisan for his labor, and the person furnishing materials for materials furnished, it shall be the duty of the owner to distribute the amount pro rata among the several claimants, as shown by the itemized statement furnished the owner."

The section relied on by the Morganton Manufacturing Company (sec. 2005) purports to deal with "the liens created and established by this chapter," it is true; but it says, also, that they shall be paid "according to the priority of the notice of the lien filed with the justice or the clerk," and as the provisions in favor of subcontractors are segregated, giving the means of acquiring the lien and of enforcing it, and have no reference to filing a lien with a justice or a clerk, except when it says it is not necessary to do so, we are of opinion that the two sections are not in conflict, and that section 2035 relates to liens required to be filed with the proper officers, and does not affect the provisions as to subcontractors, who acquire a lien by notice to the owner.

PARROTT *v.* R. R.

This is not only in accordance with law, but also with justice and equity, for when men have put their money and labor in a building, and the balance due is insufficient to pay all, it is not right for one to have the whole fund, in the absence of negligence, because he gets to the clerk's office first.

We find no error.

Affirmed.