# CHARLESTON.

## CARPER v. UNITED FUEL GAS CO.

### Submitted May 3, 1916.   Decided May 16, 1916.

1. MINES AND MINERALS—*Oil and Gas Lease—Implied Covenant.*
   In an oil and gas lease creating a specific term, imposing an alternative duty upon the lessee to drill a well within a specified period or pay a stipulated rental for delay and providing for like postponement of development through successive periods within the term, there is no implied covenant for diligent operation merely to make the lease profitable to the lessor. The delay rentals provided for are deemed to be full satisfaction and compensation for postponement of operation. (p. 436)..

2. SAME.
   Nor is there an implied covenant in such a lease, operative within the period of postponement, to drill off-set wells on the leased

premises for prevention of loss of the subject matter of the lease, the oil or gas, or both, as the case may be, by drainage through wells on adjacent or neighboring lands.  (p. 438).

3.  SAME—*Oil and Gas Lease—Implied Condition.*

But there is an implied condition that, in the event of such drainage or imminent danger thereof, the lessee will, upon the demand of the lessor, drill a well on the leased premises, for such purpose, within the last period for which the delay rental has been or shall be accepted, or commence one within said period and diligently prosecute the work on it, accompanied by notice of intention to refuse to receive further payments of rentals and declare a forfeiture of the lease for failure to drill the same. (p. 442).

4.  SAME—*Oil and Gas Lease—Damages for Breach.*

Under such a lease, the lessor is not entitled to recover damages for failure to drill off-set wells to prevent drainage, while the lessee exercises his optional right to pay money in lieu of drilling and the lessor accepts it.  (p. 443).

5.  CONTRACTS—*Construction—Power of Court.*

Judicial power to make additions to the terms of contracts on the theory of implication, in the process of construction, is measured and limited by necessity in the effectuation of the intention of the parties.  (p. 441).

6.  SAME—*Construction—Implied Condition.*

If an implied condition will adequately protect from the results of a contingency which it is evident the parties did not intend to disregard but for which they made no express provision, and will be less onerous to one of them than a covenant for such purpose would be, the principle of equity governing in construction and the limitation of necessity upon additions by implication, make it the duty of the court to adopt the condition, not the covenant, as an unexpressed provision of the contract.  (p. 441).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, Roane County.

Action by H. R. Carper and another against the United Fuel Gas Company.  Judgment for plaintiffs, and defendant brings error.

*Reversed and remanded.*

*Chas. Powell, Kemble White* and *R. G. Altizer,* for plaintiff in error.

*Pendleton, Mathews & Bell,* for defendants in error. *Harper & Baker, Davis, Swartz & Templeman, Arthur E. Young,* and *Chas. N. Kimball* and *Walter S. Sugden,* amici curiæ.

POFFENBARGER, JUDGE:

A judgment for $785.42 was rendered against the plaintiff in error, in an action of assumpsit for damages for the breach of alleged implied covenants and promises in an oil and gas lease, under which no wells have been drilled and on which the stipulated delay rentals have been accepted, to develop the property with due diligence and protect it from drainage. The recovery is an unprecedented one and some of the questions developed on the hearing are novel and highly important in their bearings.

Though leased as one containing 213 acres, more or less, the actual area of the tract seems to have been only 140 acres. Subject to the lease, a portion of it was conveyed to Susan J. Carper, as containing 46 acres, but its actual area is only about 25. The lease for a term of ten years and as much longer as oil or gas shall be produced under it, was executed, Feby. 24, 1906, and bound the lessee, the South Penn Oil Co., to complete a well on the premises within three months from its date or pay $53.25, in advance, for each three months of delay in the completion thereof. Provision was made for payment of the rental to the lessors or deposit thereof to their credit in the Roane County Bank at Spencer. Free gas for domestic purposes on the premises was reserved to the lessors.

On February 1, 1907, the South Penn Oil Co. assigned the lease to the Hope Natural Gas Co. and that company assigned the gas right under it to the United Fuel Gas Co., by a deed dated, June 30, 1910, the assignee assuming all the obligations of every kind and character imposed by the lease in favor of the lessors. From the date of the lease down to the date of the trial, the delay rentals have been paid, but no well has been drilled on the premises.

The drainage, if any, affects the portion of the land conveyed to Susan J. Carper more directly and particularly than the residue, but, in the deed to her, a proportional part of

the rents or royalties of any well drilled on the land so conveyed, under the existing lease, determinable by the relative quantities of the tract conveyed and retained, was reserved. Susan J. Carper, though thus jointly interested with the plaintiffs in the yield of any well that may be drilled on the land so conveyed to her, did not join in this action, but a release of any cause of action she has for failure to drill off-set wells, executed to the United Fuel Gas Co., is relied upon as a severance of the joint cause of action, excusing her nonjoinder in the action. She owned two other neighboring or adjoining tracts in addition to the 46 acres all covered by leases held by the defendant, and released the company from damages to all of these tracts by reason of the non-drilling of off-set wells, in consideration of an agreement for quarterly payments of $37.50.

The two wells by which drainage, if any, is most likely to occur are nearer to the 46 acre portion than to the residue of the leased tract. One of them is 476 feet from that part but probably three times as far from the other. The second is 575 feet from that part and considerably farther from the nearest portion of the other, a sharp angle thereof. At much greater distances, varying from a quarter of a mile to a mile, are other wells practically all around the leased tract and on leases held by the defendant. All productive of gas, some in very large quantities, they prove the field to be a good one and indicate the existence of gas in the tract covered by the lease here involved. Wells Nos. 115 and 231 on the G. R. Petit and H. C. Abbott tracts, respectively, and situate 476 and 575 feet, respectively, from the 46 acre tract, are connected with the defendant's large transportation lines leading out of the gas field to distant markets, by means of movable gates, but it is denied that gas in any considerable quantities has been used from either of them.

In so far as right of recovery is asserted in the declaration and evidence, on the ground of duty to drill, merely because the premises are shown to be gas producing territory, the case is obviously bad. By their written lease, the plaintiffs expressly assented to delay in drilling and agreed to accept, in satisfaction thereof, specified pecuniary compensation

which has been paid. In other words, they took a condi-
tional covenant from the lessee to complete a well within a
specified period or pay, periodically, in lieu thereof, stipu-
lated sums of money, and provided a like option for the
lessee as to subsequent successive periods of like length. The
lessee having elected to pay the money instead of drilling, as
it was expressly authorized to do, the lessors have accepted
it. To permit them now to recover damages for an omission
to which they have assented and for which they have been
compensated according to a standard or measure fixed by
their own solemn contract would violate a fundamental prin-
ciple of the law of contracts. However obvious the adapt-
ability of their land to successful mining operation and min-
eral production may have become by developments on neigh-
boring lands, they have suffered no denial of right except
delay to which they have assented. They still have their gas
and have been compensated for the delay.

No implied covenant on the part of an oil or gas lease for
diligent operation, or operation at all, under such conditions,
has ever been suggested or declared by this or any other
court. There are some decisions properly holding that, in
the absence of a provision for delay compensable in money,
and any other consideration, there is an implied covenant to
search for the mineral, because there is no substantial consid-
eration for such lease, unless it impliedly contains a covenant
for exploration. *Huggins* v. *Daley*, 99 Fed. 606; *Tenn. Oil
& Gas Co.* v. *Brown*, 131 Fed. 696. In the first of these two
cases, the court distinctly holds that an implied covenant to
drill a well was the sole consideration for the lease, and it
was impliedly put in because none was expressed. The lease
provided for a $50.00 forfeiture, but the court held that to
have been intended to operate only as a penalty, not as com-
pensation for delay. In the other, there was an express
covenant to explore and the instrument recited no considera-
tion, wherefore the court treated the covenant as the sole
considreation. Silence of a lease as to what constitutes its
consideration gives latitude to the court for ascertainment
thereof in the course of construction. All authorities agree
that acceptance of a stipulated delay rental must be treated

as full compensation for mere delay. An implication cannot stand against an express agreement. In so far as it is inconsistent with the terms of the agreement, it must yield.

As matter of actual decision, the doctrine of implied covenants in mineral leases has thus far been limited to those cases in which it has been invoked to supply a consideration when none has been expressed, to make effective the principle of surrender by operation of law, when the premises have been abandoned after discovery of mineral and delay rentals have ceased, and to prevent loss of the subject matter of the lease by drainage through wells on adjacent lands. In all these cases, it applies without contravention of any of the rules or principles governing the construction of contracts. The generality of the terms in which it is usually expressed cannot consistently be regarded as an indication that it has no legal limitation nor as a warrant for its application under such conditions as would make it destroy express stipulations or defeat the plain intention of the parties.

Its invocation on the ground of drainage, under the circumstances of this case, is an effort to carry it a step beyond the cases in which it has been previously applied by this court. All of them, without exception, have stood upon allegations of drainage after discovery of oil or gas and cessation of delay rental. In none of them, could it be contended the injury threatened or inflicted had been compensated by a money payment, or a covenant to accept money by way of compensation, as it is here. Drainage can be prevented only by the drilling of off-set wells, and the lessor has assented to delay in drilling and agreed to accept a money rental as the equivalent of the drilling of a well; or as compensation for the non-drilling thereof. So the appeal to the letter of the contract, in resistance of the effort to apply the doctrine of an implied covenant to protect the property from drainage, is literally and logically irresistible. Its literal force can be broken only by the application of legal principles allowing restraint of general terms to the extent of working out the intention of the parties, as disclosed by the nature of the subject matter of the contract, the situation and purposes of the parties and the circumstances under which the contract was

made. *Toothman* v. *Courtney,* 62 W. Va. 167; *Raleigh Lumber Co.* v. *Wilson & Son,* 69 W. Va. 598, 602; *Brodie* v. *Clator,* 8 W. Va. 599; *Bank* v. *Beirne,* 1 Gratt. 265. To say the lessor intended to permit the oil and gas in his land to be withdrawn from it otherwise than through wells drilled on it under the lease and thus to let it go to other persons, for nothing, as an incident of his procurement of a small money rental for two, five or ten years, would be inconsistent with reason, and contrary to the legal principles governing the relation of landlord and tenant or licensor and licensee. For the rental reserved, he is neither selling his oil or gas, nor relinquishing his ownership thereof, nor consenting to severance or abstraction thereof. He expects it to remain in the land until the rental period ends, whether it ceases by the drilling of a well or expiration of the term. Nor can it be doubted that the lessee contemplated the same result. Neither could have intended that he should take out the mineral through wells on other lands. The words of his lease contemplate his extraction of the oil and gas through wells to be drilled by him on the land and so emphatically deny any such intent on his part. The rental is for delay, not destruction. If, by the negligence or misfeasance of a tenant the demised property is materially injured, he is liable for the resultant damages, and the landlord may recover the amount thereof from him within the term, notwithstanding he has paid the rent or is bound to pay it. *Moses* v. *Old Dominion Iron Co.,* 75 Va. 95, 102. If a tenant commit waste, an action lies against him. The landlord is not limited to his rent as compensation. In these cases, there need not be an express covenant against waste, nor an express agreement to pay the resulting damages. They are implied, if not expressed.

Though, strictly speaking, the relation of landlord and tenant does not obtain between these parties, the lessee not having discovered oil or gas on the premises, there is a similarity of situation affording ground for some sort of relief or protection. But, if such ground did not exist, some implied provision would have to be read into the lease to make it effectuate the clear intent and purposes of the

parties. Without it, the lessor would be powerless to protect his property. He could not drill off-set wells without violation of his lease, and, owing to the peculiar qualities of oil and gas, and property rights of adjacent owners, he could not prevent operations on adjoining tracts. Failure of the lessee to drill off-set wells might result in total loss of the real subject matter. Since the lessee pays rent only for delay, the reading in of an implied provision for drilling to prevent drainage is not inhibited by the rules of construction, for all the words of the lease are given effect. None of them are rendered meaningless or deprived of operation. They are merely limited in their operation to the purposes for which they were inserted. Nothing is destroyed but a mere implication arising from the use of general terms and the rules of interpretation permit its destruction as a means of carrying out the manifest intent of the parties, arising from consideration of the whole contract in the light of its subject matter and purpose. *Raleigh Lumber Co.* v. *Wilson & Son,* 69 W. Va. 589, 603; *Gas Co.* v. *Gas Co.,* 56 W. Va. 402. Words and clauses in a deed or contract are not always allowed the utmost latitude of which they are ordinarily capable. It suffices to find one reasonable and substantial function for each of them. *White* v. *Bailey,* 65 W. Va. 573, 577.

If the relation of landlord and tenant had subsisted between the parties, authorities above referred to and others not mentioned could be readily and, no doubt, consistently invoked as sustaining the theory of liability for damages for breach of an implied covenant to protect the leased premises from drainage, notwithstanding acceptance of the delay rentals. Unless the estate vested by an oil and gas lease differs from an ordinary tenancy, on account of the peculiar nature of the subject matter or the purpose and terms of the lease, they would fully sustain it. But that relation had not been established, when the acts complained of here took place. Until oil or gas is found, the lease gives a mere right of exploration, and the lessee has no vested estate. After discovery of minerals, he has a conditional estate for years, in the nature of a tenancy of the surface. *South Penn Oil Co.* v. *Snodgrass,* 71 W. Va. 438; *Parish Fork Oil Co.* v. *Bridge-*

*water Gas Co.,* 52 W. Va. 192; *Lowther Oil Co.* v. *Miller-Sibley Co.,* 53 W. Va. 501. As regards damages for breach of a lease contract, by the lessee without an entry upon the premises, the right of the lessor is perhaps not the same as that of a landlord. He must do what he can by reasonable effort, to reduce or mitigate the damages resulting from the breach of the contract. *Huntington-Easy-Payment Co.* v. *Parsons,* 61 W. Va. 26; *Robrect* v. *Marling,* 29 W. Va. 765. Being in possession, he has power and opportunity to do so. In the case of a technical tenancy, he is not in possession and mitigation of the damages is not so clearly within his power.

Be that as it may, an implied covenant to prevent drainage, giving a right of action for damages for a breach thereof, is not necessary nor essential to preservation or conservation of the minerals during the specific optional term created by the lease. If a condition less onerous than a covenant will effectuate the manifest intention of the parties, as to a matter not specifically provided for in the lease, and adequately protect the subject matter of the contract, the court may justly and consistently regard it as the provision intended. Both covenants and conditions are frequently used in all sorts of contracts. They are equally known to courts, lawyers and laymen and either may have been intended by the parties, as an unexpressed safeguard against a contingency, and the courts may recognize one of them, as an implied provision, with as much propriety as characterizes such recognition of the other. And, if either will accomplish the purpose obviously intended, and one is less burdensome to either of the parties than the other, the adoption of the less onerous one is made obligatory by the rule applicable to the addition of terms to contracts on the theory of implication. Nothing is to be so added otherwise than upon the ground of necessity. *White* v. *Bailey,* 65 W. Va. 573; *U. S.* v. *Fisher,* 2 Cranch. 358; *Jackson* v. *Lewis,* 17 Johnson 475; *Turnpike Co.* v. *People,* 9 Barb. (N. Y.) 161; *Morgan* v. *Railroad Co.,* 96 U. S. 716; *Hamlyn & Co.* v. *Wood & Co.,* 2 Q. B. 488; *The Moorecock,* 14 P. D. 64; *Sterling* v. *Mitland,* 5 B. & S. 840; *Butler* v. *Manchester etc. R. Co.,* 21 Q. B. D. 207. Accord-

ingly, if it is doubtful whether a clause in a deed is a condition subsequent, breach of which would divest an estate, or a covenant breach of which would merely create a liability for damages, the courts universally hold it to be a covenant, because less budrensome and drastic in its operation and effect than such a condition. *Millan* v. *Kephart*, 18 Gratt. 9; 4 Kent's Com. 14th Ed. 152. This is only a rule of construction emanating from a general principle and made to carry it into effect. An exactly opposite rule, applicable in a different situation, may apply the same principle. The rule is subordinate; the principle it enforces, paramount. The latter is the parent of the former. Construction and interpretation always proceed upon lines of equity, fairness and reason, when the terms of the instrument are broad enough to admit the influence of such considerations. No contract will be so construed as to inflict unreasonable hardship, unless the terms clearly impose it. "Whether the words amount to a condition, or a limitation, or a covenant, may be matter of construction, depending on the contract. The intention of the party to the instrument, when clearly ascertained, is of controlling efficacy; though conditions and limitations are not readily to be raised by mere inference and argument. The distinctions on this subject are extremely subtle and artificial; and the construction of a deed, as to its operation and effect, will after all depend less upon artificial rules than upon the application of good sense and sound equity to the object and spirit of the contract in the given case." 4 Kent's Com. 14th Ed. 152.

Under the circumstances disclosed by the record of this case, typical of possibilities under thousands of leases held in the state, an implied obligation on the part of the lessee to drill a well for protection against drainage, upon necessity therefor and the lessor's demand for such action. within any rental period for which rent has been paid, with notice of intention to refuse to accept further rentals, and right in the lessor to declare a forfeiture of the lease for non-compliance with such demand, will afford full and ample protection from such losses as are complained of here. To effect this, it is only necessary to read the lease as creating a term

for the prescribed number of years, with a covenant to drill a well within a prescribed period, or pay money for delay in drilling, a forfeiture clause for non-performance and a condition that the lease shall be void, unless, in the event of drainage, the lessee shall, upon demand of the lessor, drill a well for protection against it, within the last period for which rental has been paid, or commence one within such period and prosecute the work of completing it with reasonable diligence. This imposes duty upon both lessor and lessee, but no rule of law or construction forbids that. The parties could have provided for this purpose, either an absolute or qualified condition, or a covenant with or without a clause of forfeiture for non-performance. The qualified condition is the mildest and most equitable of the three provisions. It protects the lessor and affords the lessee an opportunity to determine questions of expediency and hazard, arising upon a contingency. It cannot reasonably be assumed that the lessee would have bound himself to drill without a demand, or upon demand, had the parties seen fit to make an express provision for the contingency. On the contrary, it must be assumed that he would have preferred to subject himself to the qualified condition, dividing the duty and hazard between himself and the lessor, and leaving it optional with him to say whether he would risk the expenditure incident to the drilling of a well. As the lessee required no express provision for his protection, in case of drainage, it must be assumed, too, that he would have been willing to accept a right of forfeiture for failure to drill upon demand. These considerations as well as the general principles adverted to point unerringly to the measure or provision to be adopted here as an implied provision of the contract.

Moreover, this conclusion harmonizes with the general scheme of the lease. It does not contemplate reception of both delay rentals and damages as the equivalent of well rentals or oil royalties. One of its provisions is that the completion of a well shall be and operate as a full liquidation of the delay rentals during the remainder of the term. If the lessee may take the delay rentals and then sue for damages for non-drilling, measuring them by the stipulated well rent-

als or oil royalties, he virtually obtains both delay rentals and royalties from wells. The construction here adopted renders this conflict with the spirit and terms of the lease impossible.

The construction upon which this action is based not only subjects the lessee to a burden unnecessary for adequate protection of the lessor, gives the latter greater right than is essential to the preservation of his minerals and conflicts with a provision of the lease, but also puts it in the power of the lessor to assert inequitable demands against the lessee. Whether drainage occurs or not is often indeterminable with any reasonable degree of certainty. In such cases, the former may take his rentals as they become due, remain absolutely silent as to any desire that the land be drilled, in view of the uncertainty as to its productiveness, and then after the lapse of years, bring an action for damages for breach of the implied covenant. By his conduct, he may indicate his entire satisfaction with the rentals or his preference therefor and later set up an unconscionable demand for damages. The construction adopted here imposes duty upon both parties, respecting a matter of mutual interest, and puts it beyond the power of either to take any undue advantage of the other.

Under this construction, there is no right of action for damages. Plaintiff's remedy was a demand for the drilling of wells, refusal to accept further rentals, and, on failure to drill, a declaration of forfeiture by the execution of a new lease to a third party or otherwise.

As the declaration sets forth all the express covenants and terms of the lease, claims implied covenants to drill within the term of the lease and especially an implied covenant to protect from drainage by the drilling of wells, avers no wells have been drilled on the land, and is silent as to whether the delay rentals have been paid, the demurrer thereto should have been sustained. If the rentals were paid, the express covenant was fully discharged, and payment thereof is not negatived. Read as a whole, the declaration shows the demand is founded solely upon the alleged implied covenants to drill within the term, notwithstanding payment of

the rentals, and to drill for prevention of drainage, while the delay rentals are paid and received.

For the reasons stated, the judgment will be reversed, the verdict set aside, the demurrer to the declaration sustained and the case remanded with leave to amend the declaration.

*Reversed and remanded.*