LEWIS W. IVES *vs.* CITY OF WILLIMANTIC.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued April 7th—decided June 3d, 1936.

*John A. Danaher,* with whom was *John Buckley,* for the appellant (plaintiff).

*Samuel B. Harvey,* with whom was *Arthur T. Kelley,* for the appellee (defendant).

BANKS, J. The city of Willimantic owned a reservoir and ice houses on its shores, with equipment for harvesting ice, which under its charter it was authorized to distribute to its inhabitants. For many years prior to 1929 the plaintiff had distributed the ice harvested by the defendant under an operating agreement with it which ran from year to year. On January 10th, 1929, the parties executed an agreement covering the sale of ice harvested by the defendant to the plaintiff and its distribution by him for a term of five years, with an option in the plaintiff to renew the agreement for a further period of five years. The agreement pro-

vided that the city "does hereby bargain and sell unto the party of the second part [the plaintiff], such quantity of ice (together with the right to carry away the same until January 1, 1934) as the City owns or shall harvest [in] that period of time in the ice houses on the premises near the Pumping Station" at the price of $1.25 per ton; also that the plaintiff should "cause the ice to be harvested and oversee the same on terms and at prices to be agreed upon." The plaintiff agreed to pay at that rate for the ice removed by him from the ice houses each month and that he would dispose of it during the term of the agreement to the inhabitants of the city only at a maximum price of fifty cents per hundred weight.

For the purpose of carrying out the contract the plaintiff provided trucks and other equipment for the storage and delivery of ice in accordance with its terms. There was no ice harvested in 1932 or 1933 because of a lack of freezing conditions to render a crop harvestable. In the fall of 1933 the defendant sought to procure from the plaintiff a cancellation of the contract and to buy his rights thereunder, but the plaintiff refused to agree to a cancellation and thereafter exercised his option to renew it for the additional term of five years. In January, 1934, the parties executed a further agreement reciting that the city at its annual meeting had appropriated only $1000 for the harvesting of ice, which was not sufficient to fill the ice houses to their capacity and providing that, when that sum was exhausted, the plaintiff might harvest such additional ice at his own expense as he might see fit, and that he should pay $1.25 for the first eight hundred tons of ice taken from the ice houses and twenty cents a ton for ice taken in excess of that amount. It also provided that the agreement should be binding only for the current season of 1934, and that it should not

impair the rights of the parties for the extended term under the original agreement. In the summer of 1934 defendant's ice houses were destroyed by fire, the defendant has not rebuilt them and has not harvested any ice from its reservoir since August, 1934.

The question presented upon this appeal involves the construction of the contract of January 10th, 1929. The plaintiff claims that under it the defendant was bound to harvest ice, the quantity to be measured by the reasonable needs of its inhabitants, and that it breached its contract by its failure to do so since the season of 1934. The defendant contends that the contract did not require it to harvest any particular quantity of ice and that if none was harvested it was under no obligation to the plaintiff. The defendant agreed to sell the plaintiff such quantity of ice as it "shall harvest" during the term of the agreement. It did not expressly agree to harvest any ice. The plaintiff's contention is that, though not expressly so stated, there is necessarily implied from the language used an agreement to harvest ice when there was any to be harvested, and that this was the apparent intention of the parties.

The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used. A promise not expressly made will not be read into the contract unless it arises by necessary implication from the provisions of the instrument. *Lakitsch* v. *Brand,* 99 Conn. 388, 393, 121 Atl. 865; *McGarrigle* v. *Green,* 76 Conn. 398, 54 Atl. 609; 13 C. J. 558, § 521; 6 R. C. L. 856, § 244.

The plaintiff construes the contract as an agreement

by the city to harvest and sell to him such ice as the inhabitants of the city should require and argues that there is implicit in the agreement to sell an agreement to acquire the article to be sold. The argument begs the question, which is—What did the city agree to sell and the plaintiff to buy? Had the contract provided for the sale by the city to the plaintiff of ice sufficient to meet the requirements of the inhabitants of the city undoubtedly there would be implied a requirement that it acquire the article to be sold. But the contract expressly states that the article sold is such quantity of ice as the city "shall harvest" in its ice houses during the term of the contract. If it harvested ice it was bound to sell it to the plaintiff and no one else, and he had the exclusive right to distribute it in accordance with the terms of the contract. If there was no ice to harvest because of lack of freezing conditions, as was the case in 1932 and 1933, it is not claimed that the city was obliged to furnish ice for the plaintiff to distribute. Nor do the terms of the contract require the city to furnish ice if for any other reason it has harvested none. It may well be that the parties contemplated that in seasons when there was ice to be harvested the city would harvest it and sell it to the plaintiff. But there may well have been reasons why the city was unwilling to obligate itself to harvest any particular quantity of ice or to harvest any ice at all in any particular season, and why the plaintiff was willing to execute a contract which would give him nothing more than the right to buy and distribute the ice if any was harvested.

It does not appear that the plaintiff, in reliance upon the five year contract, provided himself with trucks and other equipment in addition to those which he had for the execution of his yearly contract, or that he assumed any obligation to distribute ice except as

it was furnished him by the city. To construe the contract as obligating the city to furnish a definite amount of ice during its term would be to give effect to an unexpressed intent contrary to the express provision of the contract that the ice sold was such as the city "shall harvest." The promise sought to be implied is not one necessary to the carrying out of the contract or the intent of the parties as expressed in it, but one that is in direct conflict with that actually expressed in the contract.

The situation is not unlike that in *McGarrigle* v. *Green,* supra. In that case the plaintiffs agreed to manufacture hats for the defendant for two years, furnishing the machinery and equipment necessary to the manufacture of the style of hats which he might desire to have made, but the contract contained no provision as to the quantity of hats to be manufactured for the defendant. We held that, whatever may have been the intention of the parties at the time the agreement was made, the contract itself did not, either in express terms or by necessary implication, bind the defendant to furnish the plaintiff with any orders for hats to be made for him. The contract here did not in express terms or by necessary implication bind the city to harvest any ice, and, when none was harvested, it was under no obligation to furnish any to the plaintiff, since the contract provided for the sale only of such ice as the city actually harvested.

There is no error.

In this opinion the other judges concurred.