**Jacqueline H. DEDIER, Appellant,**

**v.**

**Mrs. Ethel GROSSMAN, Independent Executrix of the Estate of Frank Grossman, Deceased, Appellee.**

**No. 17427.**

Court of Civil Appeals of Texas, Dallas.

April 3, 1970.

Rehearing Denied May 8, 1970.

Dean Carlton, David H. Rosenberg, Meer, Chandler, Carlton, Simon & Bates, Dallas, for appellant.

Robert W. Smith, Smith, Smith, Dunlap & Canterbury, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Jacqueline H. Dedier brought this action against Mrs. Ethel Grossman, individually and as Independent Executrix of the Estate of Frank Grossman, Deceased, seeking to recover the sum of $5,000, with interest, by virtue of the terms and provisions of a letter agreement dated February 14, 1964. The letter, made the basis of this cause of action, is typewritten upon the printed letterhead of "FEAZELL ADVERTISING

SPECIALTY CO., San Francisco, California," and is here reproduced:

"February 14, 1964

Mrs. Jacqueline H. Dedier
115 La Cuesta Drive
Greenbrae, Calif.

Dear Mrs. Dedier:

This is to acknowledge that I received five thousand ($5,000.00) dollars from you in two installment, 2,500 in Nov. 8, 1963 and 2,500 Feb. 14, 1964 to be invested in joint ventures to be selected by me in accordance with my business expirence (*sic*), with the object of recovering a minimum of 20% return of the investment of such ventures.

If anytime you wishes (*sic*) the return of this sum of money and to withdraw from any such ventures, I shall have a period of six months for each of $2,500.-00 dollars I have received with the understanding that each month you'll receive your share of profit till all the money returned to you.

Sincerely Yours

Feazell Advertising Spec. Co.
/s/ Frank Grossman
Frank Grossman (owner)

FG/eb

encl."

The case was tried before the court, without a jury, and the facts were submitted to the court by way of written stipulation, as follows:

"1. That the Inventory, Appraisement and List of Claims, a copy of which is attached hereto and identified as Exhibit A, is in all regards, true and correct, and that there are no other assets or investments of any nature whatsoever of the subject estate.

2. That there is approximately, and no more than, the total sum of Four Thousand Dollars ($4,000.00) in claims against the subject estate.

3. That the date of death of Frank Grossman was April 9, 1966.

4. That that certain letter dated February 14, 1964, a copy of which is attached hereto as Exhibit B addressed to Mrs. Jacqueline H. Dedier and signed by Mr. Frank Grossman, is in all regards authentic and represents the sole, complete and entire agreement and understanding between the Plaintiff and the deceased Frank Grossman.

5. That formal demand for payment of Five Thousand Dollars ($5,000.00) was made by the Plaintiff on the Executrix of the Estate of Frank Grossman, the Defendant herein, on June 7, 1966. That this claim was denied by the Defendant as Executrix of the Estate of Frank Grossman on November 2, 1967.

6. That the date on which the Application for Probate of the Will of Frank Grossman was filed was May 4, 1966. That the date of the Order of the Probate Court, appointing Mrs. Ethel Grossman, Defendant herein, as the Independent Executrix of the Estate of Frank Grossman, deceased, was June 2, 1966."

The court, based upon the agreed facts, rendered judgment that Jacqueline H. Dedier take nothing by her action.

The trial court filed the following facts and conclusions of law:

"1. I find the facts to be as stated in the stipulation of the parties on file herein.

2. I conclude that the letter agreement does not create a debt from the decedent to plaintiff, but rather an investment to be repaid out of profits, if any, from joint ventures.

3. I conclude that plaintiff is not entitled to any recovery herein."

Appellant urges that by the plain and express terms of the letter agreement she was entitled to return of the funds advanced Grossman, upon demand, and that such demand not having been complied with she is entitled to have judgment rendered in her favor. Appellee, by counterpoint, contends that the trial court correctly interpreted the "clear wording" of the instrument in question. By cross-points appellee says that there was no money from the joint venture in decedent's estate at the time of his death upon which appellant could make her claim and also appellant's claim was barred by the four year statute of limitations.

The only question presented to us for resolution is one of law: Did Frank Grossman agree with Jacqueline Dedier to pay back or return to her the sum of $5,000 upon demand?

■ The answer to this question must be found within the four corners of the letter. That Grossman wrote the letter to Mrs. Dedier is not denied. It is signed by him; and his initials appear in the lower left corner as the dictator of the letter. The parties stipulate that the letter is in all regards authentic and represents the sole, complete and entire agreement and understanding between Grossman and Mrs. Dedier. No one contends that the letter is ambiguous. If there is no ambiguity in a written contract its construction and meaning become a question of law for the court. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193 (Tex.Sup. 1962); Davis v. Andrews, 361 S.W.2d 419 (Tex.Civ.App., Dallas 1962, writ ref'd n. r. e.); and Dial Temp Air Conditioning Co. v. Faulhaber, 340 S.W.2d 82 (Tex. Civ.App., Dallas 1960).

■ The trial court in this case concluded, as a matter of law, that the words of the contract were such as to not create a debt from Grossman to Dedier, but rather, an investment to be repaid out of profits, if any, from the joint ventures. In deciding the correctness of this legal conclusion drawn from the instrument in question we are governed by certain well established principles of law:

(1) The primary rule of construction of an instrument is that the real intention of the parties be ascertained and given effect. 13 Tex.Jur.2d, Contracts, § 122, p. 287, and cases therein cited.

(2) The real intention of the parties should be ascertained by the language used in the agreement. The question is not what the parties meant to say but the meaning of what they did say by the use of the words contained in the agreement. Cutrer v. Cutrer, 334 S.W.2d 599 (Tex.Civ. App., San Antonio 1960); Davis v. Andrews, 361 S.W.2d 419 (Tex.Civ.App., Dallas 1962); Republic National Bank of Dallas v. National Bankers Life Ins. Co., 427 S.W.2d 76 (Tex.Civ.App., Dallas 1968).

(3) The entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties. It is not proper to rely upon a single clause or paragraph in attempting to ascertain the meaning of the words used. 13 Tex.Jur.2d, Contracts, § 113, pp. 270–271; Steeger v. Beard Drilling, Inc., 371 S.W.2d 684 (Tex.Sup.1963); Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003 (1941); General American Indemnity Co. v. Pepper, 161 Tex. 263, 339 S.W.2d 660 (1960); Ervay, Inc. v. Wood, 373 S.W.2d 380 (Tex.Civ. App., Dallas 1963).

(4) Where there is any question concerning the meaning of the words used in an agreement it will be construed most strictly against the party who drafted the same and therefore responsible for the language used. 13 Tex.Jur.2d, Contracts, § 121, pp. 285–286, and cases therein cited.

(5) In the absence of fraud or mutual mistake all intentions of the parties may be

conclusively presumed to have been embodied in their written agreement and they may be held legally chargeable not only with the knowledge of the meaning of the terms used but also with knowledge as to the legal effect of the contract created by the use of such terms. 13 Tex.Jur.2d, Contracts, § 123, p. 291.

(6) A contract includes not only what is expressly stated but also what is necessary to be implied from language used; and terms that may clearly be implied from consideration of entire contract are as much a part thereof as though plainly written on its face. Lilac Variety, Inc. v. Dallas, Texas Co., 383, S.W.2d 193 (Tex.Civ.App., Dallas 1964); Altgelt v. Elmendorf, 86 S.W. 41 (Tex.Civ.App.1905); 13 Tex.Jur.2d, Contracts, § 163, p. 348.

(7) Absent fraud or mistake the court will not make a new contract for the parties or add to, modify, or change in any particular the agreement that they have made. 13 Tex.Jur.2d, Contracts, § 130, pp. 308–309.

(8) "The courts will enforce the agreement as the parties have made it, without regard to whether the parties have contracted wisely or foolishly and without regard to whether, in the light of subsequent events, a hardship was effected." 13 Tex.Jur.2d, Contracts, § 130, pp. 307–308; Menard v. Sydnor, 29 Tex. 257 (1867); Wooten Properties, Inc. v. Smith, 368 S.W.2d 707 (Tex.Civ.App., El Paso 1963); Phillips v. Seiberling Rubber Co., 278 S.W.2d 293 (Tex.Civ.App., El Paso 1954).

(9) Words and phrases used in a contract will be accorded their ordinary, popular, and commonly accepted meaning. 13 Tex. Jur.2d, Contracts, § 135, p. 312; Fox v. Thoreson, 398 S.W.2d 88 (Tex.Sup.1966).

When we consider the words utilized by Grossman in his letter to Mrs. Dedier in the light of these landmark principles of law we are unable to agree with the trial court's conclusion that the agreement did not create a debt. The words, though possibly inapt, clearly create a promise on his part to return to Mrs. Dedier the $5,000 advanced by her, in the event she elected to exercise her wish for the return thereof. Failure on the part of Grossman, or his estate, to perform the obligation created a cause of action in favor of Mrs. Dedier.

■ When the letter is viewed within its four corners it is quite apparent that the first paragraph thereof is an acknowledgment by Grossman of the sum of $5,000, paid in two equal installments of $2,500 each, and his agreement to invest the money in a joint venture or ventures to be selected by him "with the object of recovering a minimum of 20% return of the investment of such ventures." However, in the second paragraph of the letter agreement Grossman tells Mrs. Dedier that any time she wished to have the sum of money returned to her and to withdraw from such ventures, that he, Grossman, should have a period of six months within which to return the first $2,500 and another period of six months for the return of the second $2,500 "till all the money returned to you." Even during this period of time he promised Mrs. Dedier that should there be any profits coming from the venture or ventures that she would be entitled to her share thereof each month until "all the money," obviously meaning the $5,000, had been returned to her. In the sentence that makes up the second paragraph of the letter the phrase "return of this sum of money" could only refer to the $5,000 received by him and also the phrase "each of $2,500.00" could only refer to the two items of $2,500 each, totaling $5,000, described in the first paragraph. We see and observe nothing in any of the words used in this complete letter agreement which would justify the conclusion of the trial court in saying that Mrs. Dedier is to be repaid only out of the profits, if any, from the joint ventures. It says plainly that she is to receive her profits, if any, and also that if she should wish, at any time to withdraw from the undertaking

that she had the perfect right to do so and that in such event Grossman would have a period of one year within which to return the total amount of money to her.

■ While it might be earnestly contended that such an agreement from Grossman's standpoint would be unwise and foolish, such fact cannot legally relieve him of responsibility. As Judge Simkins said, "As men bind themselves so shall they be bound." Simkins, 3rd Edition, "Contracts and Sales," p. 493. In the absence of fraud or mistake the law contemplates that men contract with eyes open and with full knowledge of the legal effect of their action.

■ We find no merit in appellee's contention that Mrs. Dedier's cause of action was barred from the four year statute of limitations. This contention is based upon the premise that the letter constituted a demand obligation so that the statute of limitations began to run on the date of the letter. This position might have been sound if demand was not essential to the existence or statement of the cause of action based upon the agreement. However, the letter clearly gives to Mrs. Dedier the right to terminate the arrangement at any time which she might choose. Until she made a demand for the return of her money no cause of action came into being. 37 Tex.Jur.2d, Limitation of Actions, § 59, p. 180. Demand by Mrs. Dedier came well within the four year statute of limitations. Appellee's cross-point is therefore overruled.

We sustain appellant's points of error and overrule appellee's cross-points. The letter agreement sued upon creates an indebtedness in favor of Mrs. Dedier against Grossman and his estate in the sum of $5,000 and the trial court should have rendered judgment for such amount in favor of Mrs. Dedier against Grossman's estate. Accordingly, the judgment of the trial court is reversed and judgment here rendered that Jacqueline H. Dedier to have and recover of and from Mrs. Ethel Grossman, Independent Executrix of the Estate of Frank Grossman, Deceased, the sum of $5,000, together with interest thereon from date at the rate of 6 per cent per annum, and all costs of suit.

Reversed and rendered.

BATEMAN, J., dissents.

BATEMAN, Justice (dissenting).

I respectfully dissent. I am unwilling to insert a promise into the written contract which the contracting parties did not see fit to incorporate therein. The letter agreement contains no express promise by Grossman to return her investment to appellant, either out of the enterprise itself or out of his own pocket; and for Grossman and his estate to be saddled with such an obligation by mere implication such must result from the language employed in the instrument or be indispensable to carry the intention of the parties into effect. 17 Am.Jur.2d, Contracts, § 255, p. 650.

The parties in this case stipulated that the letter in question "represents the sole, complete and entire agreement and understanding between" them. This unequivocal negation of any additional or implied agreement is in line with the rule of law stated in Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S.W.2d 632, 635, 137 A.L.R. 408 (1941), as follows:

"In the outset it should be noted that when parties reduce their agreements to writing, the written instrument is presumed to embody their entire contract, and the court should not read into the instrument additional provisions unless this be necessary in order to effectuate the intention of the parties *as disclosed by the contract as a whole.* * * * It is not enough to say that an implied covenant is necessary in order to make

the contract fair, or that *without* such a covenant it would be improvident or unwise, or that the contract would operate unjustly. It must arise from the presumed intention of the parties as *gathered from the instrument as a whole.*" (Italics mine.)

See also Weil v. Ann Lewis Shops, 281 S.W.2d 651, 655 (Tex.Civ.App., San Antonio 1955, writ ref'd); East Ohio Gas Co. v. City of Akron, 81 Ohio St. 33, 90 N.E. 40, 42–43 (1909); Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.2d 1039, 1041 (1928); Stalcup v. Eastham, 330 S.W.2d 237, 240 (Tex.Civ.App., El Paso 1959, writ ref'd n. r. e.); Morganton Mfg. & Trading Co. v. Anderson, 165 N.C. 285, 81 S.E. 418, 420 (1914).

As stated in Ives v. City of Willimantic, 121 Conn. 408, 185 A. 427, 428 (1936):

"The question is not what intention existed in the minds of the parties, but what intention is expressed in the language used."

Implied provisions in contracts are not favored by the law, and are permitted only on the ground of necessity, 13 Tex.Jur.2d, Contracts, § 163, p. 349, and then only when a consideration of the entire writing admits of no other reasonable construction. United States v. Nickel, 243 F.2d 924, 927 (10 Cir. 1957).

I think another construction is just as reasonable as the one adopted in the majority opinion. The appellant evidently invested in some business enterprise which both parties assumed would be successful, as evidenced by the optimistic recitation of the high return expected and the provision that appellant should receive her share of the profits of the venture while withdrawing her investment therein. An implication of a right to withdraw her investment from the enterprise itself is quite as reasonable as an implied promise on the part of Grossman to guarantee the success and solvency of the enterprise by making himself personally liable for the return of appellant's investment if the enterprise could not be made to return it. The opinion of the majority adopts the latter, but if either implication is warranted the former, being the less onerous of the two, should be the one to be adopted. Carper v. United Fuel Gas Co., 78 W.Va. 433, 89 S.E. 12, 16 (1916).

If any implied promise is to be inferred, it must necessarily arise from the second paragraph of the letter and become effective upon appellant's wishing for the return of the money *and* to withdraw from the ventures. If the words used were intended by the parties to have the effect decreed by the majority, the words "and to withdraw from any such ventures" would be superfluous and meaningless. But if we give effect and meaning to the entire sentence the thought is conveyed that if appellant wishes the return of the money invested by her she knows the only way she can get it is by withdrawing from the ventures, and that if given the time stipulated Grossman will endeavor to get it for her from that source.

I cannot concur in the decision on the ground that the letter should be most strictly construed against Grossman because he prepared it. In the first place, I see no evidence in the record that he prepared it. I do not think the appearance of his initials in the lower left corner of the letter constitutes such evidence. Without knowing who placed the initials there, or directed that they be placed there, I would regard their presence on the letter as no more than a scintilla and as having no probative force. Certainly, the fact that Grossman signed the letter is no evidence that he prepared it. It often happens that one paying money to another prepares the release or other agreement to be signed by the one to whom the money is paid or delivered. In the second place, even assuming that he prepared it, this rule of construction is applicable only in the case of an ambiguous instrument, and both

parties concede that this one is not ambiguous. In the third place, that would amount to a personal guarantee of the safety of an investment cannot in my opinion properly be read into such a letter under the guise of judicial construction even if Grossman did prepare it.

I would affirm the judgment.