CASE 61—ACTION BY A. C. MAYES, &C., AGAINST J. E. LANE AND OTHERS ON A CONTRACT FOR BUILDING A CHURCH.—OCT. 28.

# Mayes, &c. v. Lane, &c.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. REVERSED.

BUILDING CONTRACT—CONSTRUCTION—BONDS—SURETIES' LIABILITY—COMPLETION OF CONTRACT—DISCHARGE—PAYMENT OF PRICE—BILL OF EXCEPTIONS—SIGNING—TIME—EXTENSION.

Held: 1. Where sureties of a building contractor bound themselves that the contractor would furnish the material and erect the building "in strict accordance with the plans and specifications furnished," and "in accordance with the terms and conditions of the contract," and the contractor failed to comply with the contract, the building was not completed, so as to release such sureties from liability.

2. Where sureties of a building contractor bound themselves that the contractor would furnish the material and erect the building, and the contractor furnished the material and labor, but the owner was compelled to pay for a portion thereof, the bond was not complied with.

3. Where a building contract provided that 85 per cent. of the contract price should be paid during the progress of the work, and the balance on final completion, the owner of the building was not bound to see that such 85 per cent. was applied by the contractor to the discharge of his obligations for material and labor, as against the contractor's sureties.

4. Where sureties of a building contractor agreed that the contractor would complete the building in strict conformity with the plans, etc., and would furnish all necessary material and la-

bor, they were liable to indemnify the owner against claims for labor and materials furnished for the building for which the claimants were entitled to a lien thereon.

5. Where a building contract required the owner to pay 85 per cent. of the price as the work progressed, and the remaining 15 per cent. on final completion, the sureties on the contractor's bond were not released by reason of the owner's payment of the 15 per cent., before completion of the contract, in settlement of lien claims for material and labor, which operated to release the sureties' liability *pro tanto*.

6. Where an action was heard by the court, and it extended the time within which a bill of exceptions might be filed until the next term of court, the fact that thereafter the court held a special term did not affect the orders previously made, extending the time for filing the bill.

WM. MARBLE, HENDRICK & MILLER AND JOHN C. GATES, FOR APPELLANTS.

Appellants contend:

1. That in an action at law wherein the answer presents a purely legal defense, and where, upon the calling of the case for trial a jury is waived and the case submitted to the court for hearing upon the law and facts, the appellant had a right to require the court to separate his conclusions of fact and of law, and it is error in the court after this request has been duly made, to transfer the case to equity upon the court's own motion over appellants' objection and then render a judgment without such separate conclusions or findings. Civil Code, sec. 332. We can not find any decisions on this point because we suppose there is not a parallel case on record in Kentucky.

2. We contend that before a surety can claim that he is released by act of the creditor of his principal, he must show the act of the creditor either expressly released the principal or the surety, or was such as to *injure* the *rights* of the *surety* in some way or *suspend* or *lessen* his opportunity to *protect* himself or to be *substituted to the rights of the creditor*. Sneed's Exrs. v. White, 3 J. J. Mar., 529.

3. We contend in this case that the bond given by Lane with Hart and Katterjohn as his sureties, made the sureties liable for his failure to perform the work in a workmanlike manner according to the plans and specifications which accompanied and were made a part of the contract and also bound them to make good his failure to comply with that part of his contract which stipulated that he should "provide all the materials and perform all

the work mentioned in the specifications and shown on the drawings prepared by the architect, and all other *labor* and *materials* necessary to complete the entire work" of a church building he contracted to erect—the sureties having, by their bond promised that he would do these very things. We say that under this bond the sureties were liable for mechanics' liens upon the building contracted by Lane in the erection thereof.

4. As the pleadings made an issue upon the question of defective work and an issue as to whether or not appellants violated their contract and acted negligently and in bad faith with the appellees, the sureties, and injured and lessened their chances to protect themselves by paying to Lane more than 85 per cent. of the contract price, we contend we had the right to have the court's conclusions of fact upon these points, separate from his conclusions of law.

### AUTHORITIES CITED.

Civil Code, secs. 332, 334; Sneed's Exr. v. White, 3 J. J. Mar., 529; St. Mary's College v. Meagher, 11 R., 113; Royster v. Heck, 14 R., 266; Aaron v. Mendel, 78 Ky., 427.

J. D. MOCQUOT, ATTORNEY FOR APPELLEE HART.

1. The utmost good faith must be exercised by the principal toward a surety.

2. The release by a principal creditor of a fund upon which he could rely for his security, operates to release the surety in toto.

Under the provisions of the contract which, with the plans and specifications were drawn by a competent architect, the appellants were at all times required to retain in their hands 15 per cent. of the cost of labor and material incorporated into the building, and payments were only made on the authorization of the architect on certificates in writing given by him. At the conclusion of the work appellants should have had in hand $642, whereas the petition itself shows that they only had $163.17.

We claim there was an absence of good faith on the part of the principal creditor in this case, and also that the violation of the plain provisions of the contract released the sureties on Lane's bond in toto, and that the judgment of the chancellor was correct.

### AUTHORITIES CITED.

Aaron v. Mendel, 78 Ky., 427; Sneed's Exrs. v. White, 3 J. J. Mar., 525; Royster v. Heck, 14 R., 266; St. Mary's College v.

Meagher, 11 R., 112; Beach on Contracts, sec. 484; Gallegher v. St. Patrick's Church, 63 N. W. Rep., 864.

BLOOMFIELD & CRICE, ATTORNEYS FOR KATTERJOHN.

> Four thousand three hundred dollars was the price to be paid to Lane for the building. No one intimates that Lane would lose anything, or did lose anything, at this price, and this whole sum was in the hands of appellants. They had the power therefore, by following the contract and paying only 85 per cent. as the work progressed to have saved the sureties and themselves and completed the building without trouble to themselves or the sureties, and reasonable good faith to the sureties, Katterjohn and Hart, who were absent, would have required, and surely did require this to have been done. Appellants were on the ground seeing the work as it progressed, and the amount of it, and with their architect to certify, and carrying out the contract with the sureties would have saved the sureties. And we insist this action is only an effort of appellants to unjustly charge back to these sureties money in their hands that the principal had no right to, and the payment of which to the principal was in bad faith to the sureties and entirely and absolutely released them as such sureties.

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

The Christian church at Princeton burned, and the congregation, desiring to rebuild it, entered into a contract with the appellee, James E. Lane, a contractor, for that purpose. The contract price was $4,300, but it was reduced to $4,280. Article 4 of the contract reads as follows:

"In consideration of the fulfillment of the agreement herein made by the contractor, the owner agrees to pay the said contractor the sum of forty-three hundred dollars ($4,300.00) in installments as follows: 85 per cent. of the cost of the labor and materials incorporated into the construction of the building from time to time as the work progresses and the balance ten days after the entire work has been completed, provided the property is free from all liens or rights of liens for debts due or claimed to be due from the contractor

and satisfactory evidence thereof is furnished (if requested) to the owners.

"All payments shall be made upon written certificates from the architect to the effect that in their opinion such payments have become due, but no certificates or payments shall be considered as a waiver by the owner of any of the provisions of this contract, nor shall any waiver of any breach of this contract be held as a waiver of any other or subsequent breach."

Those representing the church, being unwilling to rely upon Lane's obligation, required him to give a bond to secure the church, which he did, with George O. Hart and F. W. Katterjohn as sureties. The bond reads as follows:

"This Agreement Witnesseth:—That whereas James E. Lane, of the city of Paducah, Ky., has entered into a contract in writing of even date herewith, with E. M. Johnson, T. M. Powell and T. J. Johnson as the building committee, selected by the members of the Christian church of Princeton, Ky., through their board of officers, to supervise and direct and contract for the construction of a church building in Princeton, Ky., to furnish the material, build and erect for them a brick church building on the lot of ground on which the Christian church, which was recently destroyed by fire, stood, for the sum of four thousand and three hundred dollars ($4,300.00) well and truly to be paid to said Lane, and said Lane to furnish said material and build and erect said church building in strict accordance with the plans and specifications furnished.

"Now, therefore, in consideration of the premises, and in order to secure said E. M. Johnson, T. M. Powell and T. J. Johnson, building committee, as aforesaid, in the faithful compliance by said Lane with the terms of said contract, said Lane and the undersigned F. W. Katterjohn, Jr., and George

O. Hart, his sureties, hereby declare and acknowledge them-
selves firmly bound and indebted to said E. M. Johnson, T.
M. Powell and T. J. Johnson, building committee as afore-
said, in the sum of two thousand five hundred dollars
($2,500.00) ; this obligation to be void however if said Lane
shall well and truly furnish said material and build and erect
said church building in strict accordance with the terms and
conditions of said contract, otherwise it shall remain and be
in full force and effect."

Pursuant to the contract, Lane began the construction of
the church. According to the claim of the representatives
of the church, and which is sustained by the evidence, Lane
did not construct and complete the church according to the
plans and specifications and terms of his contract. It will
be observed that 85 per cent. of the contract price was to
be paid upon the certificate of the architect as the work pro-
gressed, and 15 per cent. was to be paid in ten days after
the building was completed, providing the property was free
from all liens or rights of liens for debts due or claimed to
be due from the contractor. The 85 per cent. was paid be-
fore the building was completed. After the contractor had
quit the work, but before the building was completed, as re-
quired by the contract, the 15 per cent. was paid (less some-
thing over $100) to persons having liens on the building for
material and labor. After Lane quit work upon the building,
it was ascertained there were several hundred dollars due from
the contractor for material which had been used in the con-
struction of the building, and due laborers for work done in
the construction of it.. These sums the church was compelled
to discharge. This action was brought against the sureties
on his bond to recover damages for his failure to complete
the building according to his contract, and for failing to dis-
charge the debts for the material and labor, and for which

liens existed on the building. Defense is made chiefly upon the grounds (1) that the church was completed; (2) that the bond of the sureties did not make them liable for the defective construction of the building, or to discharge any liens existing for material or labor in its construction; (3) that, as the church did not retain the 15 per cent. of the contract price, the sureties are released from liability on the contract.

We must first determine what liability was imposed upon the sureties by their bond. Under the contract the sureties bound themselves that Lane would furnish the material and build the church "in strict accordance with the plans and specifications furnished," and "in accordance with the terms and conditions of said contract." Was the building completed, in the contemplation of the agreement of the parties, if it was not built in accordance with the specifications and terms of the contract? Our opinion is that it was not. The building committee representing the church desired the building to be erected according to plans and specifications agreed upon. This the contractor agreed to do, and the sureties guarantied that it would be so built. The rule is that the sureties are only bound according to the terms of their bond. Certainly it would be an utter disregard of the language of the bond to hold that the church was completed, when Lane failed to erect it according to the plans and specifications. The sureties guarantied that Lane would furnish the material and erect the building. In the erection of the building, Lane had to perform the labor himself, or to employ some one to do it. It follows that the sureties guarantied that the necessary materials and labor would be furnished to erect the building. But it is urged on behalf of the sureties that the terms of their bond were complied with when the material and labor were furnished; that their contract did not require them to protect the church against the cost of the ma-

terial and labor. Reduced to the last analysis, their claim is that Lane complied with his contract by furnishing the material and labor, although the church was compelled to pay for such part for which Lane failed to pay. Lane did not comply with his contract when he furnished the material and labor, unless he paid for it, or released the building from liability therefor. The parties agreed that Lane was to draw 85 per cent. of the contract price for the purpose of paying his accounts for material and labor, and it may be added here that the church was under no obligation to see to the application of the 85 per cent. to the discharge of such debts. Under the law, a lien existed for the material which went into the building, and for labor performed in its erection. It would be an extremely narrow view to take of the contract to hold that the sureties were under no obligation to protect the church against the claims for material and labor for which a lien existed on it.

The next contention is that they are released because the church paid out most of the 15 per cent. of the contract price before the church was completed according to the contract. We recognize the law to be that the relation between a creditor and one known to him as surety is one of trust and confidence, and demands the exercise of good faith upon the part of the creditor in dealing with him. Circumstances under which a surety may be released by the conduct of the creditor are well stated in Sneed's Ex'r v. White, 3 J. J. Marsh., 526, 20 Am. Dec., 175, where the court said: "But any settled agreement or active interference by the obligee whereby the surety may be injured or subjected to increased risk, or deprived of or suspended in the assertion of his equitable right to force the obligee to sue the principal, or of his right to pay the debt, and occupy the attitude, in equity, of the obligee, will release the surety in equity." It is perfectly

manifest that the 15 per cent. was to be withheld until the church was completed, and to be applied to the discharge of any liens which might be ascertained to exist against the church. The evidence in this case shows that the 15 per cent. was not sufficient to discharge the lien claims against the church, by several hundred dollars, but whatever part of it was so applied was disposed of as the contract required. The sureties can not complain of that disposition of it, as it was made according to the terms of the contract. Besides, that disposition of it released them, *pro tanto,* of their liability for the debts paid with it. Our conclusion is that the sureties guarantied that Lane would furnish the material and labor necessary to complete the contract, and after he failed to do it they are liable to the church for the damage which was sustained by the breach of the contract, not to exceed the amount of their bond; that their obligation is not discharged until the building has been released of liens for material furnished and labor performed in the erection of the building.

Our opinion is, under the facts of this case, the appellants are not entitled to recover the $10 per day for the delay in the completion of the building. It was an action at law, and the law and facts were submitted to the court, and the testimony was heard in open court, but the court transferred the case to equity on his own motion while it was so being heard. The court extended the time until a day in the next term of court for filing a bill of exceptions. Afterwards the court called and held a special term. At the special term the appellants presented the bill of exceptions, but the appellee objected to having it signed and made part of the record, presumably because it was proper to have it done on the day in the next regular term fixed in the order of extension. The bill of exceptions was presented and signed and made part of the record at the time designated by the order

of the court. Our opinion is that the intervening of the special term did not affect the order previously made extending the time for filing the bill of exceptions.

The judgment is reversed for proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.