PRINCIPAL AND SURETY—BUILDING CONTRACTS—BONDS—MECHAN-
ICS' LIENS—LIABILITY OF SURETY.

> A building contractor agreed to build a house and to furnish
> all labor and material and provided a bond conditioned that
> the principal should "well and truly indemnify and save
> harmless the said obligee from any pecuniary loss resulting
> from the breach of any of the terms, covenants, and condi-
> tions of said contract on the part of the said principal to be
> performed." *Held,* that such bond is broad enough in its
> terms to bind the surety for losses sustained through the pay-
> ment of mechanics' liens; since simply contracting for the
> materials, etc., and leaving the owner of the premises to pay
> for them is not furnishing them in any substantial sense.

Error to Wayne; Donovan, J. Submitted January 14,
1909. (Docket No. 86.) Decided April 24, 1909.

Assumpsit by Edgar Stoddard and another against
William H. Hibbler, principal, and the Title Guaranty &
Surety Company, surety, on a building contractor's bond.
There was a judgment for plaintiff on a verdict directed
by the court, and defendant surety company brings error.
Affirmed.

*Luman W. Goodenough,* for appellant.

*Ari E. Woodruff* and *Frank W. Atkinson,* for ap-
pellees.

MONTGOMERY, J. The defendant Hibbler entered into
a contract with the plaintiffs, by the terms of which he
promised and agreed, for and in consideration of the sum
of $3,700, to furnish all labor and material necessary to
build and complete, according to plans and specifications
furnished by party of the first part, a two-family double
house. Plaintiffs undertook, in consideration of the

premises, to pay the consideration price in installments. Upon the execution of this contract the defendant Hibbler, as principal, and the defendant company, as surety, executed a bond in the sum of $2,000, reciting that the principal had entered into a certain contract with the obligee, describing it, and a copy of which was attached to the bond, and conditioned that the principal "shall well and truly indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of said contract on the part of the said principal to be performed." The defendant Hibbler abandoned the work after entering upon it, leaving unpaid in the hands of the plaintiffs about $1,300, of which $987.32 was expended in completing the work, but liens amounting to $1,595.94 were filed against the property. This action is brought to recover the amount of these liens. The circuit judge directed a verdict for the plaintiffs, and the defendant surety company brings error.

The sole question raised is whether the surety company is bound by its obligation to indemnify the plaintiffs against loss arising from the payment of mechanics' liens. It is strenuously insisted that the bond of the defendant is not broad enough to make it liable for mechanics' liens. Defendant cites, as sustaining this contention, *City of Sterling* v. *Wolf*, 163 Ill. 467; *Gato* v. *Warrington*, 37 Fla. 542; *Boas* v. *Maloney*, 138 Cal. 105; *Hughes* v. *Smith*, 114 La. 297; *L'Hote Lumber Manfg. Co.* v. *Dugue*, 115 La. 669; *Dunlap* v. *Eden*, 15 Ind. App. 575. The case of *City of Sterling* v. *Wolf* presents the single question of whether, under a provision in a contract between the city and a sewer contractor that he should furnish all materials, his surety became liable to a third person for materials furnished him. This question was answered in the negative. The case of *Hughes* v. *Smith* was an action brought to recover because of the failure to take a sufficient bond as required by the statute of the State. It was held that the bond accepted was not a

compliance with the terms of the statute. It throws no light upon the question involved in this case. The same thing is true of the case of *L'Hote Lumber Manfg. Co.* v. *Dugue.* The case of *Dunlap* v. *Eden* was likewise an action brought by a third person, not a party to the bond, and it was held that its terms were not such as to authorize an action brought by such third person. It is obvious, therefore, that none of the cases so far referred to bear directly upon the question presented.

The case of *Gato* v. *Warrington* does give some support to the claim made. In that case one McClatchy entered into an agreement with the appellant by which he agreed to erect, finish, and deliver, on or before January 1, 1891, in true, thorough, artisan, perfect, and substantial manner, certain buildings, according to plans and specifications attached. The appellant agreed on his part to pay the sum of $8,260 as follows, viz.: As the work progressed the said J. McClatchy was to submit his weekly pay rolls, duly signed and receipted, also for such material as might be on the ground. McClatchy secured Warrington and Kernan as sureties. They entered into a separate obligation on the same date, whereby they acknowledged themselves held and bound in the sum of $2,000 upon condition that McClatchy would fulfill in every particular the said contract for the erection of the buildings according to plans and specifications, and to deliver the same on or before the date mentioned in the contract, finished in a thorough, artisan, perfect, and substantial manner. It appeared in the case that appellant had not, in making the payments, insisted in all cases upon the pay rolls being presented signed and receipted, and had not limited his payments to material which was on the ground. This departure was urged as one ground of defense. It was also claimed that the bond did not obligate the sureties to indemnify the appellant against liens of mechanics and others. The court said:

"The sureties have a right to stand upon the strict

156 MICH.—22.

terms of their engagement, and we discover no specific agreement on their part to indemnify appellant against liens for work done and material furnished in the construction of the buildings, nor is such a liability contained in the reasonably necessary import of the terms of the obligation."

Whatever may be said of this reasoning, there was another and sufficient reason given by the court for the conclusion reached. That was, that it was apparent from the contract that, in paying for the construction of the buildings, appellant reserved the right to pay McClatchy, as the work progressed, upon signed and receipted weekly pay rolls, and for material on the ground; and the proof showed that appellant advanced over $3,000 to McClatchy to pay laborers, and not on receipted pay rolls. If appellant paid this money in disregard of the contract, he could not hold the sureties responsible for it, as any material departure from the agreement had the effect of releasing them.

The case of *Boas* v. *Maloney* may also be said to be in point. In that case the contract provided that, in consideration of the sum of $2,850, to be paid in certain installments as designated in the contract, Maloney was to furnish the necessary labor and materials, including tools, implements, and appliances required, and perform and complete in a workmanlike manner all the new work and repairing, plumbing, painting, plastering, etc., according to the plans and specifications. The bond given, after reciting certain conditions of the contract, provided:

"Now, therefore, if said P. Maloney shall well and truly perform, observe, and abide by each and all of the covenants, provisions, and obligations contained in said contract, then this obligation shall be discharged and of no further force or effect, but otherwise it shall remain in full force or effect," etc.

The court said:

"The sureties are to be held according to the strict terms of their contract, and it cannot be extended by im-

plication so as to make them liable beyond its terms. Maloney agreed to build and construct the house for $2,850. He did the work according to the contract, and has not claimed any more than the $2,850. He furnished the labor and materials, and did not pay for them, and hence the liens were filed. The amount due for the labor and materials was due by Maloney, and not by the plaintiff. The bond did not provide that the building should be delivered up free from liens. The plaintiff did not require, nor did Maloney put such clause in the bond. The fact that the debts due by Maloney became, by virtue of the statute, liens upon plaintiff's property, did not make the sureties liable. They had not agreed to pay such liens, nor to be responsible therefor."

The court cited to sustain this contention the case of *Gato* v. *Warrington*, supra. The reasoning of these cases does not commend itself to the court. In view of the statute of this State, which entitles laborers and materialmen to liens, it seems to us a most narrow construction to say that, when the contractor agrees to furnish all labor and material necessary to build and complete a house, he may comply with this requirement by simply placing the material on the ground, engaging the labor, and leaving the owner to pay for it, or to permit a lien to stand against his property. This is not furnishing the material in any substantial way, and we find that other courts have taken a very different view from that expressed in the cases referred to.

In the case of *Mayes* v. *Lane*, 116 Ky. 566, the court had this question under consideration. The court said:

" Under the contract the sureties bound themselves that Lane would furnish the material and build the church 'in strict accordance with the plans and specifications furnished,' and 'in accordance with the terms and conditions of said contract.' * * * The sureties guaranteed that Lane would furnish the material and erect the building. In the erection of the building, Lane had to perform the labor himself, or to employ some one to do it. It follows that the sureties guaranteed that the necessary materials and labor would be furnished to erect the building. But it is urged on behalf of the sureties that the terms of

their bond were complied with when the material and labor were furnished; that their contract did not require them to protect the church against the cost of the material and labor. Reduced to the last analysis, their claim is that Lane complied with his contract by furnishing the material and labor, although the church was compelled to pay for such part for which Lane failed to pay. Lane did not comply with his contract when he furnished the material and labor, unless he paid for it, or released the building from liability therefor."

The case of *Kiewit* v. *Carter*, 25 Neb. 460, is directly in point. In that case Kough, the contractor, agreed to build a frame cottage, and he further agreed to furnish all the material, such as lumber, hardware, brick, lime, sand, paints, oils, etc., as might be necessary to complete the house according to the plans and specifications, and agreed to furnish a bond for the faithful performance of his contract. This bond was, in all substantial respects, identical with that in the instant case, and was conditioned that said J. S. Kough would faithfully perform all the covenants and agreements contained in the building contract made between J. S. Kough and James Carter. Of the contention that is here made, the court said:

" The plaintiff in error contends that the bond given by him and others does not provide for mechanics' liens; that he is a mere surety, and is not bound beyond the strict terms of the bond. The second paragraph of the contract provides that Kough is 'to furnish all the material, such as lumber, hardware, brick, lime, sand, paint, oils, etc., as may be necessary to complete said house according to the plans and specifications.' If Kough failed to pay for such materials therefor, and the plaintiff below was required to pay the same, Kough and his sureties would be liable on the bond. Had Kough paid for these articles, no mechanics' lien would have been filed. The lien is not a cause, but a consequence, flowing from the nonpayment of the materials. In other words, it is merely a mode of enforcing payment for materials used in the erection of a building.".

This case was cited with approval in *Friend* v. *Ralston*, 35 Wash. 430. The same question was presented to

the court in *Closson* v. *Billman*, 161 Ind. 610. In that case a contract was made by one Worley to furnish Billman all lumber, doors, frames, sash, and all other materials for the erection of said house, and to build and construct said residence in accordance with certain plans and specifications. It was also provided that Worley should furnish a bond for the faithful performance of the obligation in said contract. Such bond was given, conditioned that, if the said Worley should build, construct, and complete the said residence according to his contract with said C. D. Billman, and according to the plans and specifications therein referred to, and within the limit of time thereinafter provided, then the bond should be null and void, otherwise in full force and effect. It was contended that no breach of the bond was shown, as it was not alleged that Worley did not construct and complete the house in accordance with the plans and specifications. The court held that the provision of the bond that Worley should build, construct, and complete the said residence would alone seem sufficient to require him to furnish and pay for the necessary materials, so as to deliver them free of lien. The court added:

" When we look to the contract, however, it is plainly provided that he is to furnish the lumber, and the provision concerning the payment of $250 on presentation of receipted bills for materials furnished and delivered upon the lot makes it clear that it was contemplated that said Worley should pay for the materials he was to furnish. The bond provides that Worley is to build, construct, and complete the residence 'according to his contract,' and it was as much his duty to deliver the house free of liens on account of materials as it was to use materials which belonged to him. To hold, in the face of the bond and contract, that the construction and completion of the building in accordance with the plans and specifications was a compliance with the bond, although the owner would be compelled to pay out large sums in excess of the amount stipulated in the contract to discharge liens for the purchase price of materials, would be to keep the word of promise to the ear, but break it to the hope."

See, also, 5 Current Law, p. 472; 9 Current Law, p. 436.

It will be seen that the weight of authority sustains the holding of the circuit judge; and, as in our view the better reasoning also supports this holding, the judgment will be affirmed.

Grant, Ostrander, Hooker, and Moore, JJ., concurred.