J. L. FELLOWS, Appellee, v. ARTHUR ERRINGTON et al.,
Appellants.

**PRINCIPAL AND SURETY:** Suretyship and Indemnity Contrasted.

1   A bond which provides that it is given for the full performance
of a named contract, and makes said contract a part of the
bond, and distinctly provides that the surety assumes the obli-
gation of *"suretyship only,"* imposes an original obligation on

the surety to carry out and perform all the terms of the bond equally with the principal, barring only the fact that the surety may be released by some material act of omission or commission by the obligee.

**PRINCIPAL AND SURETY: Liability on Unadjudicated Claims.**
2  One who has contracted for the erection of a building on his premises, and has reserved the right to discharge claims and liens which the contractor may allow to be placed upon the property, may, in case such liens are filed, pursue one of two courses:

First.  He may, in good faith, pay unquestioned claims; or

Second.  He may allow the claims to be adjudicated against himself, *even in the absence of the principal contractor;* and

Third.  He may, in either case, enforce full reimbursement from a *surety.*

**PARTIES: Principals and Sureties.** The obligee in a bond may sue
3  the surety therein without joining the principal.

*Appeal from Grinnell Superior Court.*—P. G. NORRIS, Judge.

JANUARY 27, 1919.

REHEARING DENIED MAY 21, 1919.

ACTION at law to recover upon a building contract and bond given to secure its performance. Trial to a jury, verdict and judgment for plaintiff, and the defendant Casualty Company appeals.—*Affirmed.*

*B. J. Cavanaugh,* and *Bray, Shifflett & Wilkie,* for appellant.

*J. H. Patton* and *H. L. Beyer,* for appellee.

PER CURIAM.—On April 28, 1914, the plaintiff entered into a written contract with the defendant Errington, by the terms of which the latter undertook to furnish the materials and labor and construct a residence building for the plaintiff, to be completed on or before February 1, 1915, at the aggregate price of $18,868. To secure the performance of such contract, Errington, with

1. PRINCIPAL AND SURETY: suretyship and indemnity contrasted.

the defendant Maryland Casualty Company, made and delivered to plaintiff a bond. This bond is in the usual form of such instruments. It is not a mere undertaking to hold plaintiff harmless against loss or damage from any failure by Errington to perform the contract, but the Casualty Company thereby expressly takes upon itself the obligation of surety for the full performance of the contract, according to its terms. To make this plain beyond doubt or equivocation, it annexes the contract to the bond, and declares, in so many words, that such contract is made a part of the bond "as fully as if recited at length therein;" and to make the company's relation to the contract and to the plaintiff doubly sure, the bond further declares that "the obligation of the surety is and shall be construed as one of suretyship only."

The contract provided certain terms and times of payment to the contractor, and also contained the following stipulation:

2. PRINCIPAL AND SURETY: liability on unadjudicated claims.

"If at any time there shall be evidence of any lien or claim for which, if established, the owner of said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain, out of any payment then due or thereafter to become due, an amount sufficient to completely pay and discharge such lien or claim; and furthermore, the owner shall have the right to fully pay and discharge or purchase any such lien or claim, and to charge any and all amounts so expended to the contractor, and to deduct the same from the amount of any estimate or payments already due or to become due to the contractor under and by virtue of this contract. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys the latter may be compelled to pay in discharging any lien or claim on said premises made obligatory in consequence of the contractor's default."

Errington proceeded with the performance of his contract, but abandoned it before completion. At the time of such abandonment, there remained unpaid on the contract price the sum of $2,868, and for extra labor and materials, there was a further claim by the contractor of $670.

Thereafter, this action was brought on the bond. As a cause of action, after reciting the contract and bond, the plaintiff alleges that Errington, in prosecuting such work, contracted debts or claims which were or might be made liens upon the property, as follows:

| | |
|---|---:|
| Hawkeye Lumber Company | $1,452.88 |
| Louis Hanssen's Sons Company | 467.00 |
| H. T. Barber Lumber Company | 64.69 |
| Des Moines Marble Company | 320.00 |
| T. W. McClelland Company | 2,333.50 |
| Total | $4,638.07 |

For this sum, less the amount unpaid on the contract, he demands judgment. He also makes a claim for $1,000 damages on account of imperfect work in construction.

The defendant Errington makes no defense. The Casualty Company answered, and, after generally denying what is not admitted, first, admits the contract and bond; second, alleges that plaintiff made payments to Errington in excess of the architect's estimates; third, alleges that plaintiff failed to have the work done under supervision of the architect; fourth, alleges failure of the plaintiff to have the matter of his damages audited by the architect; fifth, alleges that plaintiff made several changes in the plan of the building, without the written approval of the architect.

The issues were tried to a jury, which, after finding the amount of claims due the plaintiff, and crediting thereon the unpaid remainder of the contract price and the value of the extras furnished by Errington, returned a verdict against defendant for $2,797.99. From the judgment ren-

dered on this verdict, the defendant Casualty Company alone appeals.

Keeping in mind the defenses pleaded by the appellant, and above particularly stated, the case presents no serious difficulties. None of the special or affirmative defenses pleaded have any substantial support in the testimony, and may be passed without further special comment.

We have, therefore, only to consider the plaintiff's claim, in connection with the defendant's admissions and denials and the testimony bearing thereon. The evidence tends to show that, when Errington abandoned the work, he left unpaid claims held by dealers who had sold him materials for the building, and that such dealers had already filed, or did immediately thereafter file, liens therefor, as indicated in the list hereinbefore set out. Of these claims plaintiff paid without suit all except the one filed by T. W. McClelland Company for $2,333.50. This claim, it was shown, had been sued, and the lien foreclosed against the plaintiff; but Errington was not a party to the action. There was no showing that this claim has yet been paid.

The first and most serious contention on the part of the defense is that the bond is one of indemnity only, and not of suretyship, and that the only liability of the defendant is to pay the plaintiff such damages as he has, in fact, suffered. From this standpoint, it is argued that, until plaintiff has paid the McClelland claim, he has not been damaged, and no recovery can be predicated thereon. It is further objected that, as Errington was not a party to the foreclosure of the McClelland lien, the adjudication does not bind the surety.

If the contract in this case were strictly one of indemnity, like an insurance contract or an ordinary fidelity bond, there would be room for fair argument in support of this defense; but that the bond is strictly and clearly one of suretyship, and that the liability of the Casualty Company is·

that of a surety, who is bound with his principal in all respects even as he is bound, and not as a mere indemnitor, who is bound to restore to plaintiff his actual losses occasioned by the principal's fault, is too evident for dispute. By its express terms, the bond is not only made to include the contract as a part thereof, but the company, in express terms, declares that it assumes "the obligation of suretyship." So far as the plaintiff and the company are concerned, the contract and bond are one agreement, and the company is bound with Errington; and, subject only to its right to be released because of some act or omission of plaintiff's, it is bound to the same extent that Errington is bound, upon each and every stipulation of the building agreement. *Leiter v. Dwyer Plumbing Co.,* 66 Ore. 477 (133 Pac. 1180) ; *Doyle.v. Faust,* 187 Mich. 108 (153 N. W. 725). Its obligation as between the plaintiff and itself is not secondary, but original. The liability of the surety is co-existent and co-extensive with that of its principal, and upon failure of the principal to perform his contract in any material respect, they become equally and jointly answerable to the obligee, who may maintain an action against them jointly or severally for the resulting damages, to any extent within the penal limits of the bond. In this respect, the contract of suretyship differs from one of mere guaranty or indemnity. *Singer Mfg. Co. v. Littler,* 56 Iowa 601; Baylies on Sureties 3; *Webster County v. Nelson,* 154 Iowa 670; *Woody v. Haworth,* 24 Ind. App. 634 (57 N. E. 272, 273) ; *Reigart v. White,* 52 Pa. St. 438; *Saint v. Wheeler,* 95 Ala. 362 (36 Am. St. 210) ; *Kroncke v. Madsen,* 56 Neb. 609.

The parties to the bond had the right to stipulate what their relations to each other should be, and their agreement that the obligation of the bonding company should be that of suretyship is one which the courts are bound to respect. *Grinman v. Walker,* 9 Iowa 426, 428; *Morrison v.*

*Wilson,* 30 Cal. 344; *Peterson v. Modern Brotherhood,* 125 Iowa 562. This right they have exercised, and expressed their meaning and purpose in terms too clear to be misunderstood.

The defendant Errington and the Casualty Company having assumed the liability of principal and surety for the performance of the building contract, plaintiff could properly sue thereon, jointly or severally, upon default's being made by Errington. Code Section 3465.

3. PARTIES: principals and sureties.

Among the things to which the contract and bond bound Errington and his surety, as will be seen by the extract quoted from the agreement, is that the builder will not permit the property to become incumbered by liens, and that the owner, as a matter of self-protection, was authorized at any time "there should be evidence" of any lien or claim for which, if established, he "might become liable," to rightfully retain the money with which to discharge the claim; *or* he could proceed to pay off such lien or claim at the builder's expense; *and* that, when all payments were made, the builder should refund to the plaintiff all sums the latter might be compelled to pay by reason of the builder's default. Under this agreement, it was primarily the duty of Errington to see that no liens or claims should accrue to incumber or becloud the title to the plaintiff's property. If subcontractors or dealers asserted or filed such liens or claims, plaintiff was not bound to resist and litigate them to final adjudication; for the builder had undertaken to protect him against such annoyance and expense, and upon failure so to do, no good reason appears why the plaintiff, acting in good faith, should not recognize such claims and pay them off, relying upon the builder to reimburse him, as agreed in the contract. These lien claimants were admittedly persons who had been furnishing materials to Errington; the claims had been

placed on file; and in the language of the contract, they constituted "evidence of claims or liens" for which, if established, the owner of the property might become liable. He was under no obligation to wait longer; nor, as we have already said, was he bound to litigate the claims for the benefit of the contractor or the contractor's surety. It was their duty to keep the property clear from such liens; and if, for any reason, they claimed to be released from such liability as to these claims, the least they could do, when sued in this case, was to affirmatively plead and prove the facts and circumstances constituting their defense.

Coming back now to the McClelland lien and its foreclosure, it is said that, because Errington was not a party to that suit, the adjudication therein was ineffectual, and plaintiff submitted to that decree against him at his own peril. In support of this proposition, reliance is had upon *Vreeland v. Ellsworth,* 71 Iowa 347. It may be conceded that the cited case was properly decided, but it does not follow that it establishes a rule of invariable application. It has often been held that the jurisdiction of the court to adjudicate the claim of the subcontractor against the property owner is not necessarily dependent upon the bringing of the contractor into court. The following cases all bear more or less directly upon this point: *Martens v. O'Neil,* 131 App. Div. 123 (115 N. Y. Supp. 260) ; *Burgi v. Rudgers,* 20 S. D. 646 (108 N. W. 253) ; *Maxon v. School Dist.,* 5 Wash. 142; *Green v. Clifford,* 94 Cal. 49 (29 Pac. 331) ; *McDonald v. Backus,* 45 Cal. 262; *Wood v. Oakland & B. R. T. Co.,* 107 Cal. 500 (40 Pac. 806) ; *Cooper Mfg. Co. v. Delahunt,* 36 Ore. 402 (51 Pac. 649, 60 Pac. 1) ; *City of Crawfordsville v. Barr,* 65 Ind. 367; *Hubbard v. Moore,* 132 Ind. 178 (31 N. E. 534) ; *Yancy v. Morton,* 94 Cal. 558 (29 Pac. 1111). And see *Jenkins v. Cramer,* 182 Iowa 161; *Fort Dodge, D. M. & So. R. Co. v. Burns,* 177 Iowa 51.

In the *Vreeland* case, the defendant raised the objection that the contractor was not in court, and the objection was sustained; but it is not there ruled that, in the absence of such objection, the court was without authority to proceed, or that its decree of foreclosure would be void. Doubtless, the contractor could thereafter appear, and have the matter reopened, so far as he is concerned, on a proper showing, but even then he would be held to an affirmative showing in defense against the subcontractor's claim. But whatever be the better or true rule in that regard, even if it should be held in this case that the foreclosure was wholly nugatory, the only result would be to leave the lien still standing, with the duty resting upon the contractor and his surety to remove it. Having failed in this, they are liable in this action for whatever amount is necessary to unburden the plaintiff's property. The debts to the lien holders are the debts of the contractor. It is his duty to take care of them. He is the only one in position to dispute their claims if they be unjust or excessive. He cannot rightfully sit back in silence and compel the plaintiff to assume his defense, if any he has, against these creditors, or even to wait until such creditors have pressed their claims to judgment, thus adding to the burden of costs, trouble, and annoyance, before he insists upon his rights under the bond which was given to protect him against such default in the contractor's duty. As we have already noted, there is no suggestion of plea or proof that the subcontractor's claims for which the liens were filed are unfounded, incorrect, or excessive; or that the materials sold by them were not furnished or used in the construction of the plaintiff's building; or that they have been paid or discharged by the contractor in whole or in part; or that there is any good reason whatever why the contractor should not comply with his contract and pay these debts, or otherwise remove the incumbrance. Indeed, had there been no express promise

to take care of these liens, the duty so to do would be a necessary implication from the agreement to furnish all the materials and labor, and to construct the building for the price stated. *Kiewit v. Carter*, 25 Neb. 460 (41 N. W. 286) ; *Mayes v. Lane*, 116 Ky. 566 (76 S. W. 399) ; *Stoddard v. Hibbler*, 156 Mich. 335 (120 N. W. 787) ; *Closson v. Billman*, 161 Ind. 610 (69 N. E. 449).

Indeed, it is not too much to say that the attitude of the appellant and the objections which it urges upon our attention are less defensive than obstructive, and savor more of technicality than of merit. The bond is of its own making. It is framed in words of its own choosing; and if there be any doubt of its true meaning, it is to be construed most strongly in favor of the party to whom it was given. In our opinion, the obligation on its part to perform the contract upon which its principal has made default, or to respond in damages for its nonperformance, is too clear for argument.

We find no prejudicial error in the record, and the judgment below is—*Affirmed.*

WEAVER, GAYNOR, PRESTON, and STEVENS, JJ., concur.