TRIMOUNT DREDGING COMPANY, FOR THE USE OF
BROWN & HOOFF ET AL., *v.* UNITED STATES FI-
DELITY & GUARANTY COMPANY.

[No. 32, January Term, 1934.]

*Decided April 3rd, 1934.*

The cause was argued before BOND, C. J., URNER, OFFUTT,
DIGGES, PARKE, and SLOAN, JJ.

*Herbert C. Fooks* and *George W. P. Whip,* for the appellant.

*Robert D. Bartlett* and *J. Kemp Bartlett, Jr.,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

A general contractor for work done for the United States government sues the surety on a bond given to it, the general contractor, by a subcontractor, to recover the cost of labor and materials furnished to that subcontractor but not paid for by him. The work was completed and accepted, but the subcontractor executed an assignment for the benefit of his creditors before these debts for labor and materials were paid. The question is whether there was any obligation undertaken by the subcontractor's surety to indemnify the general contractor against loss, by reason of its undertaking with the government that all laborers and materialmen should be promptly paid. At the conclusion of the trial the court directed a verdict for the defendant, judgment was entered accordingly, and the plaintiff has appealed.

The whole of the work undertaken by the general contractor, the Trimount Company, was that of clearing, dredging, and construction, in connection with a marine corps flying field at Quantico, Virginia, and was within the provision of the Heard Act (Act Feb. 24th, 1905, ch. 778, 33 Stat. 811, amending Act Aug. 13th, 1894, ch. 280, 28 Stat. 278, 40 U. S. Code, Ann., sec. 270), that any person or persons entering into formal contracts with the United States for public work shall execute the usual penal bond, with the additional obligation that the contractor or contractors "shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work." The Trimount Company executed a contract with the government based on specifications containing a provision that a bond be furnished to the government in a penal sum equal to thirty per cent. of the contract price, conditioned upon the faithful performance of the contract, "and

the prompt payment of persons furnishing labor and materials in the prosecution of the work." A bond with the stipulation contained was furnished accordingly, with the Globe Indemnity Company as surety. It is settled that those who furnish labor and materials to subcontractors for government work are protected by the bond so given. *United States, use of Hill v. American Surety Co.,* 200 U. S. 197, 203, 26 S. Ct. 168, 50 L. Ed. 437. Final settlement for this whole work was made with the general contractor on May 4th, 1933. All labor and material would seem to have been paid for by that time, but the record does not disclose the source of the payment. Suit against the surety on the bond of this subcontractor is filed, as stated, by the general contractor, or in its name, for the use of labor and materialmen whom the subcontractor did not pay. It is not a suit in which the general contractor, as a secondary obligor, required by virtue of his bond to the government to see all labor and material paid, seeks subrogation against the primary obligor, the subcontractor. No relief is here sought against the subcontractor or his assets. Recourse is had solely against a bond taken by the general contractor from the subcontractor, and recovery depends upon the undertaking of the surety in that bond.

The subcontract was with E. Roy James of Maryland, subcontractor, and it recited that the Trimont Company had entered into a contract with the United States for the work, according to specifications numbered /6182, and entitled "Filling at the Marine Barracks, Quantico, Virginia," which specifications and plans accompanying them were embodied by reference, and that James was desirous of doing certain of the work included, more particularly that described, contemplated, and included under designated sections concerning bridge and approaches, drains and water line, and a water main. Counsel here have referred to it as the construction of a bridge. James agreed to do all the work described, to carry workmen's compensation and public liability insurance, and then undertook as follows:

"(3) To indemnify and save harmless the company of and from any and all claims, demands, damages, actions or causes of action, and claims of any kind or nature which any person or persons can have or maintain by reason of any injury to persons, or damages to property resultant from any failure on the part of James to properly perform the work to be performed by him under this agreement.

"(4) To commence forthwith the work to be performed under this agreement and to prosecute said work diligently and to complete the same within one hundred ten (110) calendar days from the date of this agreement.

"(5) To forthwith procure and furnish to the company a surety company bond in the amount of Thirty-One Thousand Dollars ($31,000.00) and in form satisfactory to the company, guaranteeing the faithful performance of James under this agreement."

The undertaking was, in terms, "to indemnify and save harmless the said obligee (the general contractor) from any pecuniary loss resulting from breach of any of the terms, covenants and conditions of the said contract on the part of the said principal (the subcontractor) to be performed." In itself, it is only the usual penal bond for completion of work, and does not contain an additional obligation, such as the Heard Act requires in bonds given to the government. Compare *Babcock & Wilcox v. American Surety Co.* (C. C. A.) 236 Fed. 340, 342; *United States v. Montgomery Co.* (C. C. A.) 255 Fed. 683; *United States v. Starr* (C. C. A.) 20 Fed. (2nd) 803. If the obligation has been incurred, it must be by its inclusion in the subcontract secured.

In all this James undertook merely to do his portion of the whole work, as described in the plans and specifications, to provide insurance against liability to workmen or to the public, to indemnify the Trimount Company against any claims for injuries to person or property, and to furnish a bond guaranteeing faithful performance of that contract. The clause ordinarily embodied in contracts to secure pay-

ment for labor and materials is not included here, and the
contract is to some extent specific as to what it does include.
The plaintiff argues that the paragraph respecting indemni-
ties against claims should be divided into two stipulations,
the first covering claims without restriction as to kind, so
that it covers claims unrelated to injuries, including claims
on labor and material bills; but in the opinion of this court
the clause will not bear a construction extending the indemni-
ties beyond claims, actions, etc., "by reason of injury."
No such claims are involved now. There is no express under-
taking with the general contractor with respect to labor and
material bills, the contract and bond have not been drafted
to include it directly, and unless the reference to the speci-
fications for the work may import a guarantee of payment,
the terms of the bond cannot be found to cover it.

The specifications are not by their terms concerned with
any bonds that general contractors with the government may
exact from their subcontractors; they are concerned only with
the original government contract and the bond given to the
government. What, if any, bonds the original contractors
might in turn take from their subcontractors, or the subcon-
tractors might take from their subcontractors, would be, so
far as anything in the specifications go, exclusively the con-
cern of the private persons involved. The mere reference in
a subcontract to the contract with the government for doing
the whole of the work at the site, by which the general con-
tractor and its surety undertake to see labor and material
paid for, could do no more than charge the subcontractor with
knowledge that the general contractor and its surety have so
bound themselves. It would not add to the subcontract, and
the bond obtained upon it, an obligation to the contractor for
payment of the bills. To repeat, the fact that the subcon-
tractor is the primary obligor for unpaid labor and material
might be considered as giving the general contractor, if he
paid the bills, a right of subrogation against the subcontrac-
tor's assets; we need not decide whether it would or not. But
the suit on the bond obtained is another matter. The surety's
undertaking is confined to the terms of its contract, and is not

amplified by equitable rights against its principal extraneous to that contract. The case seems to be that the general contractor, although it inserted in its own contract, and had inserted in its bond given to the government, the required clause for payment of labor and material furnished in the work, did not take the precaution to repeat the clause in this subcontract and bond, or take anything more from this subcontractor than the usual penal bond for completion of work. It is entirely with the general contractors for public work to protect themselves; the law does not supply the deficiency if they do not take bonds to cover their extended undertaking with the government. The surety is not required by law to go beyond the undertaking in the bond obtained.

The Heard Act, taken alone, has no effect to attach the undertaking to a subcontract and bond securing performance. In the first place, it does not contain any reference at all to such subcontracts and bonds, does not by its terms require that any bonds be taken by contractors with the government, and its purpose does not appear to require it. It was designed, according to its preamble, to protect persons furnishing materials and labor for the construction of public works, and the method of protection was that of inclusion in bonds given to the government of the additional clause for payment of such persons. "Any person or persons," as the act says, "entering into a formal contract with the United States for the construction of any public work * * * shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work." 40 *U. S. Code Ann.* sec. 270. The purpose of the act has been held, as before stated, to be to provide protection for persons furnishing labor and materials to the work through subcontractors as well as for those furnishing through the government contractors. But Congress has stopped at the requirement made of the original contractor. If there should be, in turn, any protection secured for that contractor against the

liability so to be assumed, Congress has not undertaken to provide it. And nothing authorizes a court of law to provide it by extending the agreement of the parties beyond that which they have set down. In the second place, even if the Heard Act should be construed as intending this arrangement of counter-security extended down among contractors and sub-contractors, it does not operate of itself to attach the obligation to any bond. It does not of itself have the effect of imposing the obligation even on government contractors. Only a clause in the bond could accomplish it. This appears to have been settled by decisions in several suits against general contractors and their bonds. "It is well settled that where neither the contract nor the bond provides for the payment of labor and material claims, these are not protected, even though there be a statute requiring their protection." *Daughtry v. Maryland Casualty Co.* (C. C. A.), 48 Fed. (2nd) 786, 788; *United States v. Starr* (C. C. A.), 20 Fed. (2nd) 803; *United States v. Montgomery Co.* (C. C. A.), 255 Fed. 683; *Babcock & Wilcox v. American Surety Co.* (C. C. A.) 236 Fed. 340. The ruling of the trial court was correct.

*Judgment affirmed, with costs.*