**SAINT PAUL MERCURY INDEMNITY COMPANY, Appellant,**

v.

**WRIGHT CONTRACTING COMPANY, Appellee.**

**No. 7515.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 18, 1957.

Decided Jan. 6, 1958.

William B. Webb, Charlotte, N. C. (Lewis B. Carpenter, Charlotte, N. C., on brief), for appellant.

William W. Sturges, Charlotte, N. C. (Lassiter, Moore & Van Allen, Charlotte, N. C., on brief), for appellee.

Before PARKER, Chief Judge, HAYNSWORTH, Circuit Judge, and R. DORSEY WATKINS, District Judge.

PARKER, Chief Judge.

This is an appeal from a judgment for plaintiff in an action by a prime contractor on a road construction contract to recover on the bond of a subcontractor for sums that the former was required to pay for supplies furnished the latter. Plaintiff, the prime contractor, was the Wright Contracting Company, which had entered into contract with the North Carolina State Highway and Public Works Commission to do certain road construction work and had given bond as required by North Carolina General Statutes, § 136–28 to pay for labor and materials furnished in connection therewith. Plaintiff had then entered into a contract with the subcontractor, Lincoln Contractors, Inc., under which the latter agreed to do certain hauling required in the performance of plaintiff's contract. Bond was duly executed by the subcontractor to guarantee its performance of the subcontract.

After entering upon the performance of the subcontract, the subcontractor became bankrupt and plaintiff was called

upon to pay claims for materials furnished the subcontractor for which payment had not been made. The amount thus paid was $12,707.81, after application on the claims of the retained percentage provided for in the subcontract. Action was instituted by plaintiff to recover this sum of $12,707.81 under the bond of the subcontractor. Stockholders of the subcontractor who had executed an indemnifying bond to its bonding company were brought in as third parties defendant; and there was judgment for plaintiff against the bonding company on the bond with judgment over against them. Only the defendant bonding Company has appealed. Its contention is that the bond does not cover payment for supplies furnished the subcontractor or the loss sustained by plaintiff by reason of the failure of the subcontractor to pay for same.

The bond sued on contains the following provision:

"Whereas, the Principal and the Obligee have entered into a written contract, a copy of which is or may be attached hereto, dated the 10th day of February, 1954, for furnishing and supplying all labor, equipment, fuel, tools, supplies and any and all other facilities whatsoever necessary for doing certain hauling in connection with the construction of Project No. 4839 SF-548(8) and F-447(7), Durham and Wake Counties, North Carolina, the hauling specified in Contract Agreement letter, dated February 10, 1954.

"Now, therefore, the condition of the foregoing obligation is such that if the Principal shall indemnify the Obligee for all loss that the Obligee may sustain by reason of the Principal's failure to comply with any of the terms of said contract, then this obligation shall be void; otherwise it shall remain in force."

The contract, the performance of which was guaranteed by the bond, was embodied in a letter from the prime contractor to the subcontractor which contained the following pertinent provisions:

"You, as Hauling Sub-Contractor, agree to furnish and supply all labor, equipment, fuel, tools, supplies and any and all other facilities whatsoever necessary for doing the hauling hereinafter specified for the prices stipulated.

"Payments are to be made to Hauling Sub-Contractor by Contractor once each month, based on quantities to be determined as heretofore specified, except that 10% of the total will be retained until the completion of the work involved in this contract, at which time retainage withheld will be paid to Hauling Sub-Contractor upon presentation of proof that all bills for labor and materials in connection with the work have been paid in full.

"In support of this agreement Sub-Contractor is to furnish to Contractor a performance *and payment* bond in the sum of $50,000.00." (Italics supplied.)

██ ██ We think that the court below was correct in holding that plaintiff's loss was covered by the bond. Even if it be construed as guaranteeing nothing more than the performance of the subcontract, it is perfectly clear that the subcontract has been breached and that plaintiff's loss has resulted from the breach. The subcontractor agreed "to furnish and supply all labor, equipment, fuel, tools, supplies and any and all other facilities whatsoever necessary for doing the hauling" covered by the subcontract. This unquestionably meant to furnish and supply them without liability on the part of the prime contractor to pay for them; and there was a breach of the agreement when there was failure to furnish them in such a way as to protect the prime contractor from such liability. Under the North Carolina statute [1] and the bond given by the prime

---

1. General Statutes of North Carolina, ch. 136, sec. 28.

contractor pursuant thereto, the prime contractor was bound to pay for supplies used on the project including those furnished to and used by the subcontractor if the latter failed to pay for them; and the subcontractor did not furnish the supplies within the meaning of the subcontract when it merely bought and used them, leaving them to be paid for by the prime contractor. Seaboard Surety Co. v. Standard Accident Ins. Co., 277 N.Y. 429, 14 N.E.2d 778, 117 A.L.R. 658 and note. As pointed out in the case cited, a different situation would, of course, exist where the person in whose favor the bond runs is under no obligation to pay for supplies furnished and lien therefor cannot be obtained on the property to his detriment, as in Morganton Mfg. & Trading Co. v. Anderson, 165 N.C. 285, 81 S.E. 418; Warner v. Hallyburton, 187 N.C. 414, 121 S.E. 756; Page Trust Co. v. Carolina Construction Co., 191 N.C. 664, 132 S.E. 804; and United States to Use of Stallings v. Starr, 4 Cir., 20 F.2d 803. The general rule is thus stated in 43 Am.Jur. p. 896:

"As a general rule it may be stated that if the subcontractor's bond is conditioned for the indemnification of the contractor for any claim or damage for which the principal contractor may be held liable and for the payment of which the subcontractor is primarily liable, liability exists on the part of the surety on the bond of the subcontractor to indemnify the principal contractor against any liability which may be imposed upon him, or to reimburse him for any payment he may be required to make, in respect of labor and materials furnished to the subcontractor."

Where, as here, the prime contractor is bound to pay for materials used on the project, whether furnished by himself or a subcontractor, failure of a subcontractor to pay for materials furnished him is in precisely the same category as failure of a contractor to pay for labor or materials giving rise to a laborers' or materialmen's lien; and it is generally held that loss resulting from such failure and the assertion of such a lien is covered by a performance bond, whether or not payment for labor or materials is expressly required by the bond or contract. 9 Am.Jur. p. 57; Stoddard v. Hibbler, 156 Mich. 335, 120 N.W. 787, 24 L.R.A.,N.S., 1075 and note; Mayes v. Lane, 116 Ky. 566, 76 S.W. 399; Closson v. Billman, 161 Ind. 610, 69 N.E. 449, 451. In the case of Closson v. Billman, supra, the Indiana Court used language singularly appropriate here, saying:

"The bond provides that Worley is to build, construct, and complete the residence 'according to his contract,' and it was as much his duty to deliver the house free of liens on account of materials as it was to use materials which belonged to him. To hold, in the face of the bond and contract, that the construction and completion of the building in accordance with the plans and specifications was a compliance with the bond, although the owner would be compelled to pay out large sums in excess of the amount stipulated in the contract, to discharge liens for the purchase price of materials, would be to keep the word of promise to the ear but break it to the hope."

In Empire State Surety Co. v. Lindenmeier, 54 Colo. 497, 131 P. 437, 442, Ann. Cas.1914C, 1189, it was held that a building contractor's bond protected against mechanics' liens arising from the failure of a contractor to pay for materials which he had contracted to furnish. The court said:

"It was as much the obligation of the contractors and their surety under this agreement and bond that the materials should be paid for as that they should be furnished. In fact, the value of these materials was clearly included within the consideration named in the contract, the performance of which the bond was given to secure."

And in Stoddard v. Hibbler, supra, the Michigan court said:

"In view of the statute of this state, which entitles laborers and materialmen to liens, it seems to us a most narrow construction to say that, when the contractor agrees to furnish all labor and material necessary to build and complete a house, he may comply with this requirement by simply placing the material on the ground, engaging the labor, and leaving the owner to pay for it, or to permit a lien to stand against his property." [156 Mich. 335, 120 N.W. 788.]

Here the statute and the bond given by the prime contractor subjected him to the liability for labor and materials furnished for this public work, just as the property of a private individual would be subjected to a laborers' or materialmen's lien for labor and supplies so furnished; and a performance bond should be held to cover loss resulting from failure to pay for such labor or materials in either case, since it would be absurd to say that there has been a compliance with the contract to furnish labor or materials when all that has been done is use them on the job, leaving the owner, or in this case the prime contractor, to pay for them.

■ We think, also, that when the bond and subcontract are construed together and the provisions of the contract are read into the bond, as they must be,[2] the payment for labor and materials is clearly covered. The subcontract expressly provides for the retaining of 10% of progress payments until completion of the work and for payment then only "upon presentation of proof that all bills for labor and materials in connection with the work have been paid in full". This clearly evidences agreement of the parties that labor and materials are to be paid for by the subcontractor. Furthermore, the contract provides that the subcontractor is to furnish a performance and payment bond; and we think that, under the circumstances of the case, this has reference to payment for all labor and materials for which the prime contractor would be liable and not merely to claims for labor as contended by the defendant bonding company. The clause of the subcontract, upon which reliance is placed for this limitation,[3] was manifestly intended to provide for compliance with employers' liability and insurance regulations, not to limit the obligation of the subcontractor under his agreement to furnish labor and materials.

That a contract such as the one we have here obligates the subcontractor to pay for labor and materials, so that laborers and materialmen may sue upon the bond given to guarantee the performance of the contract has been expressly held in a case which, with respect to the obligation of the bonding company, is practically on "all fours" with the case at bar. In Topeka Steam Boiler Works Co. v. United States Fidelity & Guaranty Co., 136 Kan. 317, 15 P.2d 416, 418, there was a contract for the construction of a building for a railroad

2. Daughtry v. Maryland Casualty Co., 4 Cir., 48 F.2d 786; Maryland Casualty Co. v. Fowler, 4 Cir., 31 F.2d 881, 63 A.L.R. 1375; Ideal Brick Co. v. Gentry, 191 N.C. 636, 132 S.E. 800; Morganton Mfg. & Trading Co. v. Anderson, 165 N.C. 285, 81 S.E. 418, Ann.Cas.1916A, 763.

3. "Hauling subcontractor will pay the payrolls on his employees used on the work covered by this agreement and will furnish contractor and/or owner with copies in the number and on the forms required. He will report the total amount of all payrolls to his insurance company and the earnings of his employees to the proper department of the Government and the State of North Carolina, as required by the Social Security Law and the Income Tax Act as now exists. Hauling subcontractor will pay for all premiums on Workmen's Compensation, Public Liability, Property Damage and all other insurance coverage of any nature whatsoever and shall furnish contractor with certificates of insurance, giving evidence of coverage with limits for Public Liability and Property Damage, as is satisfactory to him. Should trucks be hired by hauling subcontractor, they shall be covered under his policy or policies by Hired Car Endorsements and evidence thereof furnished the contractor."

and a subcontract for a part of the work on the building with a retainage clause such as we have here and a performance bond given by the subcontractor. The plaintiffs furnished labor and materials used by the subcontractor in connection with the performance of his subcontract. The question in the case, as stated by the court, was whether the subcontractor, one Connor, agreed to pay for the labor and materials necessary to carry out the subcontract, made with the contractor, Stauffer. In answering that question the Supreme Court of Kansas, speaking through Judge Harvey, said:

"We recognize that the primary meaning of the word 'furnish' is to provide or supply that which is necessary. Webster's New International Dictionary. It does not necessarily imply ownership of the thing furnished, but may include authority to use it for the needed purpose, and when one contracts simply to furnish what is necessary, and does so, ordinarily there is no liability on the bond given to secure the faithful performance of the contract. Road Supply & Metal Co. v. Bechtelheimer, 119 Kan. 560, 240 P. 846. But in contracts for the construction of buildings where the contractor agrees to furnish the material and labor necessary to complete the building, which material and labor necessarily enter into and become a part of the completed structure, and where the price to be paid the contractor is deemed sufficient to enable him to pay for the material and labor, the word takes on a more definite implication that he shall pay for it. Other provisions of the contract may be looked to, to determine whether, under the contract as a whole, he agreed to pay for the material as well as to furnish it. * * * When, from the contract as a whole, it is clear that the contractor was to pay for material and labor necessary for the construction of the building, and a bond is given to secure the faithful

performance of the contract, materialmen and laborers who have not been paid may sue directly upon the bond."

In another Kansas case, Cooke v. Luscombe, 132 Kan. 147, 294 P. 849, 850, involving suit by a materialman on the bond of a contractor, who had contracted to "furnish all labor and materials necessary for the plastering of a church" under a contract which provided for monthly progress payments with the retention of a percentage which, as here, was not to be paid until receipts had been furnished showing payment for labor and materials, the court, in overruling a demurrer by the surety, said:

"Under the contract, defendant Luscombe agrees 'to furnish all labor and materials necessary for the plastering of a church now under construction.' When taken with the other terms in the contract and bond, it seems idle to contend that this did not mean furnish and pay for. To thus hold would render meaningless the provision in the contract providing the contractor should be paid according to the amount of work finished on the 15th of each month and the balance when the work was completed and 'after receipts are furnished showing that all labor and material is paid for.' The church must have intended that the contractor should furnish and pay for all labor and materials, or they would not have had that provision in the contract, and the contractor must have intended to pay for all the labor and material, or he would not have signed the contract with that provision in it."

See also Houston Fire & Casualty Ins. Co. v. E. E. Cloer Gen. Con., 5 Cir., 217 F.2d 906, 907; United States for Use of W. E. Foley & Bro., Inc., v. United States Fidelity & Guaranty Co., 2 Cir., 113 F.2d 888; and Seaboard Surety Co. v. Standard Accident Ins. Co., supra, 277 N.Y. 429, 14 N.E.2d 778, 117 A.L.R. 658 and note. Cf. Trimount Dredging

Co. v. United States Fidelity & Guaranty Co., 166 Md. 556, 171 A. 700.

Whether under the North Carolina decisions laborers and materialmen might sue on the bond here under consideration, we need not stop to inquire.[4] When construed in connection with the subcontract, it unquestionably guaranteed to the obligee that the subcontractor would pay for materials used by him on the project. Aside from this, failure to pay for such materials, rendering the prime contractor liable therefor, was a breach of the contract to furnish, which is clearly covered by the bond if regarded as no more than a performance bond. The judgment for plaintiff is in accord with the justice of the case and the overwhelming weight of authority, and there is nothing in the law of North Carolina to require a contrary decision.

Affirmed.

---

4. It should be noted, however, that the cases in which laborers and materialmen have been denied the right to recover on contractors' bonds are cases in which they are seeking to recover amounts for which the obligee of the bond would not be liable to them and for which they could not assert a lien on his property to his detriment. Morganton Mfg. & Trading Co. v. Anderson, 165 N.C. 285, 81 S.E. 418; Warner v. Hallyburton, 187 N.C. 414, 121 S.E. 756; Page Trust Co. v. Carolina Construction Co., 191 N.C. 664, 132 S.E. 804; and United States, to Use of Stallings v. Starr, 4 Cir., 20 F.2d 803.