John M. RYAN; Fairfield County Sprinkler Co., Inc., Donald Wells, Jr., Douglas Greenwood, Scott Gellatly, John Commante, and Bernard Cochrane, Plaintiffs,

v.

FIRE PROTECTION SPRINKLER SYSTEMS BOARD, Mark Shiffrin and James P. Butler, Defendants.

Civ.No. 3:96CV2331(JBA).

United States District Court, D. Connecticut.

March 30, 1998.

John A. Sabanosh, Andrew Houlding, John F. Strother, Rome McGuigan Sabanosh, Bridgeport, CT, for Plaintiffs.

Beth Z. Margulies, Atty. Gen's Office, Hartford, CT, for Defendants.

### RULING ON PLAINTIFFS' OBJECTIONS TO RECOMMENDED RULING ON MOTION TO ENFORCE SETTLEMENT [DOC. 93]

ARTERTON, District Judge.

The Magistrate Judge's Recommended Ruling carefully outlines the scope of plaintiffs' litigation claims, as well as details the settlement process to the extent he oversaw the finalization of the settlement agreement between the parties. On this basis, the Magistrate Judge concludes that paragraph four unambiguously refers to the Apprenticeship Training Program ("ATP") which plaintiffs had pending for approval before defendant, and whose approval plaintiffs sought by injunction. Plaintiffs object to this conclusion, maintaining that they intended to mean the ATP reflected in certain unsubmitted, undated and unsigned draft ATP documents introduced at the parties' preliminary injunction hearing, and thus defendant, the party seeking enforcement of the agreement, has failed

to demonstrate the requisite meeting of the minds on this material term.

 The interpretation and enforcement of contractual obligations between private parties is controlled by principles of state law. *Concerned Tenants Ass'n of Father Panik Village v. Pierce,* 685 F.Supp. 316, 323 (D.Conn.1988) (Daly, J.). *See also Ciaramella v. Reader's Digest Association, Inc.,* 131 F.3d 320, 322 (2d Cir.1997) (concluding that general principles of contract interpretation regarding parties' intent applied to determination of whether parties reached settlement of claims brought under the ADA, ERISA and state law, since no material difference existed between applicable New York contract principles of intent and standards applied by courts relying on federal common law). In giving meaning to the terms of an agreement under Connecticut law, that agreement must be construed to effectuate the intent of the contracting parties. *Barnard v. Barnard,* 214 Conn. 99, 109, 570 A.2d 690 (1990). " 'The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used.' " *Id.* (quoting *Ives v. Willimantic,* 121 Conn. 408, 411, 185 A. 427 (1936)).

 Plaintiffs point to the scope of defendant's cross-examination of its witnesses on the operation of its ATP as demonstrating defendant's awareness that plaintiffs' draft ATP was self-customized, and not the defendant's standard form ATP (which requires compliance with all applicable state regulations). Plaintiffs explain that it was their frustration with defendant's failure to approve its standard format ATP application that caused it to establish one of its own, employing unregistered apprentices, and thus "this litigation was initiated to protect the independent ATP of FCSC against the state's threatened sanctions" for employing unregistered apprentices. (Pls.' Obj. at 4).

Plaintiffs further fault the Magistrate Judge's conclusion that the apprenticeship training program in paragraph four, the "ATP of FCSC," in fact references plaintiffs' ATP contained in its application to the Labor Department—which attested that plaintiffs would comply with defendant's regulations—because that conclusion ignores the evidence of the development of the specialized, independent FCSC ATP in the period between March 1996 and February 24, 1997. In short, plaintiffs attempt to distinguish between "FCSC's ATP" and "an ATP of the Department of Labor." (Pls.' Obj. at 6). Plaintiffs seek either to enforce the settlement agreement requiring defendant to approve its draft, customized, post-application ATP (Ex. 3B),[1] which does not require defendant's regulation, or to be permitted to file a Second Amended Complaint with additional claims against defendant.

In defendant's supplemental brief, he refers the Court to language in the plaintiffs' complaint distinguishing between the union sponsored ATP and "FCSC's independent ATP," (Def.'s Supp.Br. At 2), the latter being the ATP for which plaintiffs sought defendant's approval, arguing that plaintiffs' own allegations support the Magistrate Judge's conclusion that the ATP referenced in paragraph four of the Settlement Agreement was intended by both parties to mean plaintiffs' competing and unapproved ATP application pending with the defendant.

Plaintiff's respond that this analysis, however, overlooks "significant developments between the drafting of the complaint and the drafting of the Settlement Agreement," (Pls.' Reply at 4), namely plaintiffs' internal development of an at-will ATP which was introduced as the previously referenced draft plan. Thus, plaintiffs argue that the Com-

---

1. John M. Ryan testified that Exhibit 3 was FCSC's "current apprenticeship standards," the last page being an apprenticeship agreement signed by each apprentice and Ryan as a representative of FCSC. (2/24/97 Tr. at 12). Exhibit 3A was introduced as the initial document that the apprentices saw when they signed, and Ex-hibit 3B was introduced as the "current" document which included an apprenticeship trust agreement signed only a few days before, February 20, 1997. (2/24/97 Tr. at 61–62). The hearing transcript, however, discloses no showing that any of these ATP documents were ever submitted, signed or dated.

plaint language should not be deemed to reflect plaintiffs' intent at the time of the settlement conference. In essence, using plaintiffs' own words, plaintiffs claim that what was intended, or what *they* intended as "the Apprentice Training Program ("ATP") of Fairfield County Sprinkler Co. ("FCSC") in paragraph four was this newly drafted ATP [that] could not be regulated or in any way discriminated against by the State." (Pls.' Reply at 7). It is hard to give credence, however, to plaintiffs' claim that they intended their draft ATP to be free from the State's further interference since the very next paragraph (five) promises that defendant will grant plaintiffs an exemption from a particular regulation (§ 31–51d–11)—an exemption which would presumably be unnecessary if indeed plaintiffs' ATP was to be its own unique one, free from all interference.

Additionally, after the settlement agreement was executed and state Department of Labor representatives visited the FCSC facility on March 24, 1997 to register the four apprentices pursuant to paragraph four of the Settlement Agreement, they were not allowed to explain the procedures and paperwork necessary to establish the ATP under the settlement because they were told by Mr. Ryan that none of the Department's paperwork would apply to the ATP at FCSC. (Guerrera Aff., Ex. 4 [attached as Ex. A to Def.'s Brief]). Importantly, Mr. Ryan would not allow the Department to register the four apprentices, despite the clear language of paragraph four providing for such registration. (*Id.*) The circumstances giving rise to the instant impasse suggest a situation far from the "injustice" of being deprived of the "bargain they reasonably believed they had made" of which plaintiffs lament, (Pls.' Reply at 8). Instead, plaintiffs' current position appears more likely to stem from a post-settlement change of heart, than from a failure of the meeting of the minds on material settlement terms.[2]

Finally, paragraph four provides that the Labor Commissioner will approve the ATP of FCSC "prospectively within a reasonable time." Prospectively means "looking forward," Blacks Law Dictionary, 1222 (6th ed. 1990), which would only make sense in reference to defendant's approval of a pending plan, i.e., although the Department refused to recognize and approve the ATP of FCSC pending before it prior to the settlement, from the settlement date forward that same ATP would be approved and recognized. It is incongruous with the meaning of "prospective" to suggest that the "ATP of FCSC" in paragraph four refers to *prospective* approval of a plan never submitted for approval, thus buttressing the Court's conclusion that the language and overall provisions of the settlement agreement would have necessarily been different had plaintiffs' newly drafted ATP been the subject of settlement negotiations.

Therefore, viewing the overall agreement within its litigation context, the Court concludes that the "ATP of FCSC" that defendant agreed to approve prospectively, including registration and service credit for plaintiffs' four specifically named apprentices, and exemption of the ATP from the "Hiring Ratio" rule, references FCSC's "independent ATP" and not its subsequently drafted program. Accordingly, the Magistrate Judge's Recommended Ruling enforcing the settlement between the parties is APPROVED and ADOPTED over objection.

Consequently, defendant Butler's Motion to Dismiss [doc. 24] is DENIED as moot.

IT IS SO ORDERED.

---

2. Further, plaintiffs' action is largely predicated on its theory that the state's authority to regulate its ATP is preempted by ERISA. This settlement, particularly the non-concession clause regarding preemption in paragraph six, comports with the objectives of settling plaintiffs' ERISA challenge to its languishing ATP application.